UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAKHAN JHA and MINAKSHI KUMARI,<br><br>                    Plaintiffs,<br><br>     v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>                    Defendant. | CASE NO. 2:23-cv-00584<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION |

## 1. INTRODUCTION

Plaintiffs Lakhan Jha and Minakshi Kumari ("Jhas") ask the Court to reconsider its summary judgment order. Dkt. Nos. 67, 69. Specifically, the Jhas ask the Court to reconsider the portions of its order granting summary judgment to Defendant Chicago Title Insurance Company on the 2011/2010 Notices and the 2004/2001 Covenants. For the reasons explained below, the Jhas' motion is DENIED.

ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION - 1

## 2. DISCUSSION

"Motions for reconsideration are disfavored" and will be granted only upon a showing of "manifest error in the prior ruling" or "new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." LCR 7(h)(1). Thus, a motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enter., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis in original). Whether to grant reconsideration is left to the Court's discretion, *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003), but reconsideration is an "'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Kona Enter., Inc.*, 229 F.3d at 890 (internal citation omitted). *See also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (A reconsideration motion "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law," and one "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.").

### 2.1   2010/2011 Notices.

The Jhas claim the Court committed manifest error by holding that "an 'as-is' clause in a purchase and sale agreement (PSA) between a buyer and seller means

that a buyer contractually 'agreed to' a title defect within the meaning of Exclusion 4(a)." Dkt. No. 69 at 3. But the Court made no such holding—misrepresenting a courts prior ruling, as the Jhas have done, is a losing strategy on a motion to reconsider.

Contrary to the Jhas claims, the Court did not hold that an "as is" clause in a purchase and sale agreement between a buyer and a seller means that the seller contractually "agreed to" a title defect. The Court cites the Jhas' decision to pursue the property in "as-is" condition as one of many factors in evaluating the applicability of Policy Exclusion 4(a). The Court relied on the agreement and other evidence in the record to support the Court's conclusion that the Jhas knew the property was experiencing significant storm drain issues before they bought it. *See, e.g.*, Dkt. Nos. 30 at 92 ("PNC is leaning toward holding onto the property until they settle things with the County to see where exactly this storm water drainage issue lies.'"); 30 at 97 ("The only fee being left to the buyers the permitting fees associated with the drainage, which the buyer agreed to take on and complete."); 54-10 at 3 ("We understand the property doesn't have a King County approved storm water drainage system."). By closing on the property with the knowledge that the storm drain issues would continue to impact the property after closing, the Jhas agreed to or assumed this defect. *See First Am. Title Ins. Co. v. Lane Powell PC*, 764 F.3d 114, 122 (1st Cir. 2014) ("An insured party 'assumes' or 'agrees' to a [defect] pursuant to [the Exclusion] when it takes property that is subject to an existing encumbrance it has knowledge of."). The Court explained this and more in its summary judgment order, so a full recap is not owed on this point. *See* Dkt. No. 67.

The Jhas also try to correct certain aspects of the record. But the bar for showing manifest error in this respect is high: "Manifest error is 'plain and indisputable'" and "'amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *Brooks-Joseph v. City of Seattle, et al.,* No. 2:22-CV-01078-RSL, 2024 WL 1173802, at *1 (W.D. Wash. Mar. 19, 2024) (quoting *Santiago v. Gage*, No. 3:18-CV-05825-RBL, 2020 WL 42246, at *1 (W.D. Wash. Jan. 3, 2020)).

The Jhas start by arguing that they did not obtain their own bids for the stormwater drainage system so they did not have "something more than knowledge," which *Tumwater* contemplates as necessary to bar coverage under Exclusion 4(a). But whether or not the Jhas obtained their own bids for the stormwater drain system, the record reflects that they used their knowledge of the deficiencies to negotiate a lower price. *See* Dkt. No. 54-10 at 3 ("We understand the property doesn't have a King County approved storm water drainage system, which the Buyer has taken full responsibility for. . .. [R]educe the purchase price by $62,000 to reflect the increase in the drainage bids.").

Additionally, the Jhas argue that the house was not actually "under construction" when they expressed interest in the property in May 2013. The Court need not consider the semantics of what constitutes a property "under construction" because this fact is not consequential to the Court's decision. What matters, and is uncontested, is that the Jhas knew there was no final occupancy certificate and that the County required stormwater repairs before it would be issued.

The Jhas also contend the Court erred by referring to them as "real estate investors." The Court based this conclusion on the deposition testimony of Keith Nelson, the Jhas' real estate agent, who stated that the Jhas "were looking for investment properties," particularly those that "had substantial upsides and also had large discounts." Dkt. No. 30 at 18–19. Regardless of whether the Jhas consider themselves to be real estate investors, the Court did not commit manifest error by concluding that they were more sophisticated than the average buyer. And that they were aware of the issues with the property, decided to buy it anyway, and used this knowledge to negotiate a lower purchase price.

Finally, the Jhas offer a declaration with screenshots from their son, Siddharth Jha, to support their contention that the Court should have applied the "mend the hold" doctrine because the Jhas did not hide documents from Chicago Title. *See* Dkt. No. 69-2 at 2, 10. Prior to this motion, the Jhas have not argued that they provided Chicago Title with all the pre-purchase documents during the initial claim investigation or at any time afterward. The Court questions the Jhas' decision to wait until the motion for reconsideration to put forward evidence that was known and available previously and which questions Chicago Title's argument on summary judgment. This is not newly discovered evidence under Rule 59(e), as this evidence was available at the time of summary judgment. *See Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'"); *Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208, 212 (9th Cir.

1987) ("Evidence is not 'newly discovered' under the Federal Rules if it was in the moving party's possession at the time of trial or could have been discovered with reasonable diligence.").

In any case, this newly introduced evidence does not change the outcome. The Jhas have not "demonstrate[d] either that they suffered prejudice or that the insurer acted in bad faith when the insurer failed to raise all its grounds for denial in its initial denial letter." *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1171 (Wash. 2000).

**2.2   2001/2004 Covenants.**

The Jhas argue that the Court erred by citing to KCC 9.04.120.B because this section of the King County Code pertains to "multifamily or commercial projects" and the Jhas' property is a single-family home. In response, Chicago Title points out that Chapter 9 of the King County Code "is exempted from the rule of strict construction and shall be liberally construed to give full effect to the objectives and purposes for which it was enacted." KCC 9.04.192.

Even if this specific section of the King County Code does not apply, the Jhas do not dispute that they must comply with the Surface Water Design Manual. Indeed, Section 1.2.6 of the Surface Water Design Manual (SWDM) requires private parties to maintain drainage facilities:

> All privately maintained [small scale drainage facility or feature] must be maintained as specified in the ***site/lot's*** declaration of covenant and grant of easement per Section 1.2.9.
> …

ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION - 6

> If the proposed project is a commercial, industrial, or multifamily development or redevelopment, or a single family residential building permit, a **drainage facility declaration of covenant and grant of easement** (see Reference Section 8-J) must be recorded at the King County Office of Records and Elections prior to engineering plan approval.

Dkt. No. 76-2 at 79 (emphasis in original); *see* Dkt. No. 76-2 at 16.

Next, the Jhas argue that the Court made an error by citing to an unadopted portion of the King County Surface Water Design Manual. True, the Court cited an exemplar of a Declaration of Covenant for the proposition that the Water Design Manual contemplates a right of ingress and egress onto properties for the County to inspect a drainage system. Setting the citation aside, however, the Jhas do not challenge the underlying premise or establish how the document being a reference document undoes the Court's prior conclusion.

Additionally, the Jhas argue that Covered Risk 14 specifically provides coverage. The Court interprets Covered Risk 14 as requiring the existence of a notice and the government's "intention to enforce the law or regulation." Dkt. No. 23-3 at 15. "This interpretation is compelled by the fact that Policy only provides coverage," *Gennaro v. N. Am. Title Ins. Co.*, No. CV233991MWFAGRX, 2024 WL 650409, at *5 (C.D. Cal. Jan. 4, 2024), "to the extent of the violation or enforcement stated in [the] notice." Dkt. No. 23-3 at 15. The 2001/2004 Covenants are recorded notices that the owner of the Property must comply with King County's drainage code as a condition of having the stormwater system on the Property and obtaining building permits. *See* Dkt. No. 7 at 78–80, 93–96. These are the same requirements

contained in King County Code Section 9.04.120. The Covenants do not "claim[ ] a violation exists or declar[e] the intention to enforce the law." Dkt. No. 23-3 at 15.

Finally, the Jhas argue that the Court erred in concluding that the 2001/2004 Covenants have resulted in no loss to the Jhas. In its motion for summary judgment, Chicago Title argued that "Plaintiffs [were] required to comply with the law regardless of whether there [was] a recorded document that says Plaintiffs must comply with the law." Dkt. No. 59 at 25. The Jhas did not address this argument in their Response to Chicago Title's Motion for Summary Judgment (Dkt. No. 60) or in their Motion for Reconsideration (Dkt. No. 69). Instead, they point to "improvements that come within the purview of the 2004/2001 Covenants." Dkt. No. 60 at 29. To support this contention, the Jhas provided a new declaration from an appraiser valuing the loss between $2,000,000 and $2,825,000. *See* Dkt. No. 69-3. The Jhas contend that introducing this new fact on a motion for reconsideration is appropriate because Chicago Title did not previously argue that there was no evidence. The Court is unpersuaded by their rationale for this late introduction of information.

At any rate, the declaration does not negate the Court's finding that there was no loss. The Jhas still have not shown that they suffered any actual loss due to the Covenants because they were required to record the covenants to get a building permit and the final Certificate of Occupancy.

### 3. CONCLUSION

The Jhas have neither shown that the Court committed manifest error nor offered new facts that were previously unavailable. As a result, the Jhas have not carried their burden and their motion for reconsideration is DENIED.

Dated this 22nd day of March, 2024.

Jamal N. Whitehead
United States District Judge