1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10
11
12
13

| | |
|---|---|
| LAKHAN JHA and MINAKSHI KUMARI,<br><br>                  Plaintiffs,<br><br>     v.<br><br>CHICAGO TITLE INSURANCE COMPANY,<br><br>                  Defendant. | CASE NO. 2:23-cv-00584<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COVERED EASEMENT CLAIM AND BAD FAITH CLAIMS HANDLING |

14

## 1. INTRODUCTION

15
16
17
18
19
20
21
22
23

This is a title insurance dispute between Plaintiffs Lakhan Jha and Minakshi Kumari (the "Jhas") and their insurance company, Defendant Chicago Title Insurance Company. Plaintiffs allege that Defendant: (1) violated the title insurance policy at issue, (2) breached its duty of good faith under Washington law, (3) violated Washington's Insurance Fair Conduct Act ("IFCA"), (4) violated Washington's Consumer Protection Act ("CPA"), and (5) was negligent in its claims handling. On previous cross motions for partial summary judgment, the Court resolved issues of coverage under the title insurance policy, limiting Plaintiffs' contract claim to one alleged title defect—the "2000 Easement." The Court also

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

found that issues of material fact precluded summary judgment on Plaintiffs'
extracontractual claims.

Before the Court is Defendant's Motion for Summary Judgment on Covered
Easement Claim and Bad Faith Claims Handling, Dkt. 86. Defendant moves for
summary judgment on the rest of Plaintiffs' contract claim and Plaintiffs' bad-faith-
related extracontractual claims. Defendant does not acknowledge Plaintiffs'
negligence claim or ask for summary judgment on that claim specifically.

Having considered the briefing, the record, and the law, the Court is fully
informed and DENIES the motion. Issues of material fact prevent summary
judgment on the remaining claims.

## 2. BACKGROUND

In 2014, Plaintiffs bought a large house in Woodinville, Washington.
Plaintiffs bought title insurance for the property through Defendant Chicago Title
and later filed multiple claims for alleged title defects under the policy. One of those
claims involved an easement for ingress/egress and utilities over the property under
King County recording no. 20000616001981 ("2000 Easement").[1] Defendant Chicago
Title acknowledged that the 2000 Easement was a covered defect in August 2021.
Nevertheless, it did not tender a benefits payment to Plaintiffs until September
2022—more than a year later. By that point, Plaintiffs had already filed this
lawsuit and moved for summary judgment. *See* Dkt. No. 3-1 (First Amended

---

[1] The Court recounts the facts behind the home purchase and the Jhas' other
insurance claims in a previous order. *See* Dkt. No. 67.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COVERED
EASEMENT CLAIM AND BAD FAITH CLAIMS HANDLING - 2

Complaint, King Cnty. Sup. Ct., No, 22-2-03741-5 SEA, Jun. 22, 2022). Defendant offered $5,000 in coverage for the title defect.

Relying on the work of its appraiser, Anthony Gibbons, Defendant maintains that $5,000 is the correct value of Plaintiffs' covered loss. Dkt. No. 17 at 23–43. Gibbons performed a diminution in value ("DIV") appraisal, which assessed the decrease in property value owing to the title defect brought on by the 2000 Easement. *See id*. at 26. Defendant offered the $5,000 via letter, briefly explaining Gibbons's DIV appraisal:

> The Company ordered a diminution in value appraisal to evaluate the loss resulting from the 2000 Easement, in according with Policy Condition 6(a)(1). A copy of the appraisal is enclosed. The appraiser determined the value of the Property without the 2000 Easement is $1,400,000 and determined the value of the Property subject to the 2000 Easement is $1,395,000. Therefore, the diminution in value to the Property, i.e. the loss, resulting from the 2000 Easement is $5,000.

*Id*. at 24. For his appraisal, Gibbons valued Plaintiffs' property as unimproved, vacant land, even though the property is improved. *Id*. at 26. Gibbons justifies this method, in part, by finding that the location of the 2000 Easement would not have affected the value of the home or other improvements. *Id*. He explains that his appraisal "is focused entirely on lot value" because "the home itself is unaffected by the missed title exception" and because "the home itself is unusual in its scale," qualifying as a "Mansion" at over 8,000 square feet. *Id*.

Plaintiffs' expert appraiser, Robert Chamberlain, disagrees with the method Gibbons used. *See* Dkt. No. 90-4 at 3. Chamberlain conducted his own DIV appraisal, but he valued the property as improved land. *Id*. According to Chamberlain, an appraiser must include the improvements to the property when

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COVERED
EASEMENT CLAIM AND BAD FAITH CLAIMS HANDLING - 3

conducting an appraisal. *Id*. He added that without considering the improvements in this case, "the value of [the Jhas' property] would be significantly artificially reduced." *Id*. He reiterated that valuing Plaintiffs' property "as vacant real property would not capture the real value, in [his] opinion." *Id*. Additionally, Defendant agreed in its Rule 30(b)(6) deposition that "[i]f you are coming up with a fair market value for a property, typically the residence is included." Dkt. No. 90-1 at 33. The Rule 30(b)(6) witness also testified as follows when discussing the DIV here:

> Q:     Okay. Now, in terms of the—doing the appraisal, was it just the real property that was being considered without the improvements on it or was it the real property with the improvements on it that was being considered?
>
> A:     It is the real property with the improvements.
>
> Q:     So the home, you know, all the improvements that are on the property?
>
> A:     Yes.

*Id*.

On top of challenging Defendant's valuation, Plaintiffs hired insurance expert Dannette Leonhardi to analyze Defendant's claims handling conduct. Dkt. No. 90-3 at 1. She concluded that Defendant did not "follow[] industry wide claims handling procedures while handling the Jhas' claims." *Id*. at 2. In a sworn declaration, she opined that Defendant's "handling of the Jhas' claims fell far short of what is considered acceptable for the industry in the context of claims handling, both from the perspective of timeliness and diligence." *Id*. at 3. She further explained her opinion as follows:

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COVERED EASEMENT CLAIM AND BAD FAITH CLAIMS HANDLING - 4

1
2
3
4
5

> Between the time when the Jhas were first told by Chicago Title that Chicago Title would Act on the 2000 Easement (August 23, 2021) and the time when Chicago Title had made any effort to *actually* tender policy benefits for the 2000 Easement (August 24, 2022), one year had passed by, the Jhas had to file suit, and had to move for summary judgment. In my view, in the context of claims handling procedures, that extraordinary effort on the Jhas' part should not have been necessary to compel Chicago Title to evaluate, appraise, and tender benefits associated with the 2000 Easement.

6

*Id.*

7
8
9
10
11
12
13
14
15
16
17
18

When Plaintiffs filed this lawsuit, they alleged that Defendant breached the title insurance contract, breached its duty of good faith, violated IFCA, violated the CPA, and that it was negligent in its claims handling. The parties then cross-moved for partial summary judgment. Defendant requested partial summary judgment on Plaintiffs' contract claim. The Court granted the motion, dismissing Plaintiffs' contract claim to the extent that it relied on alleged title defects other than the defect caused by the 2000 Easement. Dkt. No. 67. In ruling on Plaintiffs' motion for partial summary judgment, the Court found that issues of material fact about Defendant's claims handling prevent summary judgment on Plaintiffs' extracontractual claims. *Id.* Defendant's present motion asks the Court to grant summary judgment on the remainder of Plaintiffs' contract claim (related to the 2000 Easement), as well as Plaintiffs' bad faith, IFCA, and CPA claims.

19

## 3.  DISCUSSION

20

### 3.1  Legal standard.

21
22
23

"[S]ummary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (internal citation omitted).

1
2
3
4
5
6
7
8

"[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Summary judgment should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On summary judgment, courts must view the evidence "'in the light most favorable to the non-moving party.'" *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (internal citation omitted).

9
10

### 3.2   Issues of material fact prevent summary dismissal of Plaintiffs' contract claim.

11
12
13
14
15
16
17

To succeed on their contract claim, Plaintiffs must show that Defendant breached the terms of the insurance policy, resulting in damages. *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995). Despite Defendant's initial assertion that its motion is limited in scope to damages, Dkt. No. 86 at 1–2, Defendant also argues that it did not breach its contract with Plaintiffs because it accepted the claim and offered $5,000 in benefits to resolve it. *Id.* at 13, 23–24. The Court finds that issues of material fact about breach and damages preclude summary judgment.

18
19
20
21
22
23

Under the policy, Defendant must pay the "actual loss" of the covered claim up to the policy amount. Dkt. No. 86 at 12. The policy does not define "actual loss," so the Court turns to Washington law. Washington courts have defined "actual loss" in similar title insurance cases as "the fair market value of the property, less outstanding encumbrances." *Miebach v. Safeco Title Ins. Co.*, 743 P.2d 845, 845

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COVERED EASEMENT CLAIM AND BAD FAITH CLAIMS HANDLING - 6

1    (Wash. Ct. App. 1987). Put another way, the contractual term "actual loss" is the

2    property's diminution in value—or "DIV"—caused by the encumbrance (here, the

3    2000 Easement). *See id.* The Washington Court of Appeals has held that "actual

4    loss" should not only cover the "out of pocket" expenses of the insured, but the

5    entire, "'real' loss suffered by the insured, including the loss of any beneficial

6    bargain the insured made in purchasing the property." *Id.* at 846. This holding

7    adheres to "the general rule regarding damages for an insurer's breach of contract,"

8    which requires the insurer to put the insured "in as good a position as [they] would

9    have been had the contract not been breached." *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d

10   1124, 1126 (Wash. 1998) (en banc).

11         Defendant's expert appraiser, Gibbons, completed a DIV appraisal of the

12   property and concluded that the DIV was $5,000. Dkt. No. 17 at 26. Defendant used

13   this appraisal to offer Plaintiffs $5,000 on their covered claim. *Id.* at 23. Defendant

14   claims that "Plaintiffs have presented no evidence that Gibbons' valuation was

15   incorrect or provided any evidence of other damages." Dkt. No. 86 at 15. Similarly,

16   Defendant claims that "[t]here is only one expert DIV appraisal: that performed by

17   Gibbons." Dkt. No. 91 at 10.

18         Defendant's assertions are plainly incorrect. Plaintiffs' expert, Chamberlain,

19   also submitted a DIV appraisal report. Dkt. No. 90-4 at 6–50 (titled "Diminution in

20   Value Appraisal Report" for "The Jha Property"). Contrary to Gibbons's approach,

21   Chamberlain valued the property as improved property—not vacant land. *Id.* at 3.

22   He testified via sworn declaration that his method is correct, and that valuing the

23   property as vacant, unimproved land (as Gibbons did) would result in an

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COVERED
EASEMENT CLAIM AND BAD FAITH CLAIMS HANDLING - 7

1    undervaluation of Plaintiffs' loss. *See id*. Chamberlain explained that he has been

2    appraising real properties for over 50 years, including in the context of title defect

3    cases. *Id*.  He stated that "[a]ny fair market value of the Jhas' property must

4    include the improvements, because without them, the value would be significantly

5    artificially reduced." *Id*.

6         It is unclear why Defendant claims there is "no evidence that Gibbons'

7    valuation was incorrect," Dkt. No. 86 at 18, when Plaintiffs' expert submitted a

8    sworn declaration criticizing Gibbons's valuation method. Moreover, while

9    Defendant argues that Chamberlain's opinions do not qualify as expert opinions,

10   Dkt. No. 91 at 3, Defendant did not challenge Chamberlain's opinions under Rule

11   702 or *Daubert*. And it is axiomatic that the Court cannot weigh expert testimony to

12   grant summary judgment in Defendant's favor. *Dominguez-Curry v. Nevada*

13   *Transp. Dept.*, 424 F.3d 1027, 1035–36 (9th Cir. 2005) (the district court incorrectly

14   "weigh[ed] Dominguez's credibility in dismissing her allegations as 'vague and

15   conclusory,' 'unsupported,' and 'self-serving'").

16        Next, the Court rejects Defendant's repeated suggestion that Plaintiffs had to

17   submit their own, competing DIV appraisal to Defendant before filing this lawsuit.

18   *See e.g.*, Dkt. No. 86 at 24 ("While Plaintiffs disagree with the DIV appraisal of their

19   actual loss, Plaintiffs provided no other information to support their disagreement .

20   . . until after this litigation started."). The timing of Plaintiffs' DIV appraisal has

21   nothing to do with the elements of Plaintiffs' contract claim. And Defendant's

22   suggestion that Plaintiffs had to build and support their case against Defendant—

23   their own title insurer—before filing this lawsuit goes against Washington law. As

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COVERED
EASEMENT CLAIM AND BAD FAITH CLAIMS HANDLING - 8

discussed below in the context of Plaintiffs' extracontractual claims, Washington

law imposes a fiduciary duty on insurers to investigate claims in good faith and to

put their insureds' interests on equal footing with their own. *Coventry Assoc. v. Am.*

*States Ins. Co.*, 961 P.2d 933, 937 (Wash. 1998) (en banc).

In sum, Plaintiffs have submitted evidence showing that Defendant did not

pay or offer to pay the full value of their benefits under the policy. Thus, summary

judgment on Plaintiffs' contract claim is inappropriate.

### 3.3    Issues of material fact prevent summary dismissal of Plaintiffs' extracontractual claims.

Plaintiffs have four extracontractual claims: (1) bad faith, (2) Consumer

Protection Act (CPA), (3) Insurance Fair Conduct Act (IFCA), and (4) negligence.

Defendant does not address the negligence claim, so the Court will not address it

now. The Court considers Plaintiffs' bad faith, CPA, and IFCA claims in turn and

finds that each survives summary judgment.

#### 3.3.1    Bad Faith Claim.

Under Washington law, insurance bad-faith claims are tort claims. *Mut. of*

*Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 169 P.3d 1, 8 (Wash. 2007) (en banc)

Courts analyze them by "applying the same principles as any other tort: duty,

breach of that duty, and damages proximately caused by any breach of duty." *Id*.

(quoting *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003) (en banc)). In

Washington, "an insurer has a duty of good faith to all of its policyholders." *Smith*,

78 P.3d at 1277. In the first-party context, insurers have a fiduciary relationship

with their insureds that requires them to give their insured's interests "equal

consideration" with their own interests. *Coventry Assoc. v. Am. States Ins. Co.*, 961 P.2d 933, 937 (Wash. 1998) (en banc).

Along with the standard tort elements, the plaintiff in a bad-faith action must also show that the defendant insurer's breach was "unreasonable, frivolous, or unfounded." *Smith*, 78 P.3d at 1277. Washington law clarifies that the breach need not be intentional or malicious to qualify as bad-faith conduct:

> An insurer's duty to use good faith toward its insured may be breached by conduct which does not constitute intentional bad faith. The absence of good faith does not necessarily imply dishonesty, misrepresentation, deceit or fraud.

*Safeco Ins. Co. of Am. v. JMG Rest., Inc.*, 680 P.2d 409, 415–16 (Wash. Ct. App. 1984). "The determinative question is reasonableness of the insurer's actions in light of all the facts and circumstances of the case." *Anderson v. State Farm Mut. Ins. Co.*, 2 P.3d 1029, 1033 (Wash. Ct. App. 2000). Thus, whether an insurer acted in bad faith is usually a question of fact for the jury. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008) (en banc).

An insurer may commit bad faith by failing to adequately investigate a claim. *Coventry*, 961 P.2d at 937 (citing *Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship*, 106 F.3d 1465, 1470 (9th Cir. 1997)). An insurer may also commit bad faith by undervaluing a claim. Indeed, "as numerous courts within this district have held, '[w]here the insurer pays or offers to pay a paltry amount that is not in line with the losses claimed, is not based on a reasoned evaluation of the facts . . . and would not compensate the insured for the loss at issue, the benefits promised in the policy are effectively denied.'" *Jin v. GEICO Advantage Ins. Co.*, ___ F. Supp. 3d ___, 2023 WL

7212543, at *2 (W.D. Wash. Nov. 2, 2023) (citing cases). An insurer may commit bad faith by delaying payment on a claim as well. *Cf. Cedar Grove Composting, Inc. v. Ironshore Specialty Ins. Co.*, No. C14–1443 RAJ, 2015 WL 3473465, at *6 (W.D. Wash. June 2, 2015) ("[R]efusal to pay a demand for coverage reasonably promptly is an unreasonable denial of benefits.").

Insurers may be held liable for bad faith in their evaluation of claims, "even if the claim[s] [are] not covered" by the insurance policy. *Coventry*, 961 P.2d at 940 (citing Washington precedent). In other words, even if the insurer reaches the correct coverage result, the insurer may still breach its duty of good faith in the claims handling process. *Id*.

Evidence of bad-faith liability exists here and prevents summary judgment. First, the timeline of this insurance dispute—and the reasonable inferences that may be drawn from it—supports bad-faith liability. Plaintiffs' claims handling expert, Danette Leonhardi, opined on Defendant's delay, concluding that it violated standard claims handling practices. Leonhardi testified:

> Chicago Title did not appraise the loss associated with the 2000 Easement until August 24, 2022–11 months after confirming the 2000 Easement was in fact a title defect.
>
> . . .
>
> Between the time when the Jhas were first told by Chicago Title that Chicago Title would act on the 2000 Easement (August 23, 2021) and the time when Chicago Title had made any effort to actually tender policy benefits for the 2000 Easement (August 24, 2022), one year had passed by, the Jhas had to file suit, and had to move for summary judgment. In my view, in the context of claims handling procedures, that extraordinary effort on the Jhas' part should not have been necessary to compel Chicago Title to evaluate, appraise, and tender benefits associated with the 2000 Easement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Dkt. No. 90-3 at 3. Based on the evidence, a jury could find that Defendant's delay was "unreasonable, frivolous, or unfounded." *See Smith*, 78 P.3d at 1277. This alone is enough to defeat Defendant's summary judgment motion on Plaintiffs' bad-faith claim.

There is also evidence in the record from which a jury could conclude that Defendant breached its duty of good faith when valuing Plaintiffs' insurance claim. As explained above, Chamberlain's expert testimony raises a question as to whether Defendant undervalued Plaintiffs' insurance claim by using an incorrect valuation method. *See e.g.*, Dkt. No. 90-4 at 3. In addition, Defendant's Rule 30(b)(6) deposition testimony suggests that Defendant's expert used an incorrect valuation method, as Defendant's corporate designee testified that the value of the residence is usually included when assessing the fair market value of property like Plaintiffs'. Dkt. No. 90-1 at 33. Here, it is undisputed that Gibbons did not include the value of the residence in his appraisal. Given the evidence, a jury could conclude that Defendant's claims investigation or valuation or both were "unreasonable, frivolous, or unfounded," and that Defendant failed to give Plaintiffs' interests equal consideration when investigating the claim. *See Smith*, 78 P.3d at 1277.

Lastly, Defendant asks the Court to dismiss Plaintiffs' bad faith claim because Plaintiffs have not submitted proof of damages on that claim. The Court disagrees. Bad-faith claims "allow for recovery of expenses; consequential damages; and 'general tort damages,' including noneconomic damages such as emotional distress caused by the breach of the duty of good faith." *Beasley v. GEICO Gen. Ins. Co.*, 517 P.3d 500, 514 (Wash. Ct. App. 2022) (citing Washington precedent). Like

1   Plaintiffs' contract claim, Plaintiffs have—at a minimum—provided evidence

2   showing that Defendant failed to pay the full value of the covered claim, resulting in

3   monetary damages. Accordingly, summary judgment on the issue of damages is also

4   inappropriate.

5       ### 3.3.2    IFCA Claim.

6       IFCA provides a cause of action when a "first party claimant to a policy of

7   insurance [is] unreasonably denied a claim for coverage or payment of benefits by

8   an insurer." RCW 48.30.015(1). To "deny" a claim, the insurer need not reject it

9   outright; rather, the insurer must "effectively den[y]" benefits. *Heide v. State Farm*

10  *Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1104, 1107–08 (W.D. Wash. 2017); *see also*

11  *Morella v. Safeco Ins. Co. of Illinois*, No. C12-0672-RSL, 2013 WL 1562032, at *3

12  (W.D. Wash. Apr. 12, 2013) (rejecting insurance company's argument that "outright

13  denial of a claim for benefits" is needed to trigger an IFCA violation). "A

14  determination of whether an offer effectively denies an insured the benefits of the

15  insurance policy should focus 'primarily on what [the insurer] knew or should have

16  known at the time the offer was made.'" *Heide*, 261 F. Supp. 3d at 1108 (quoting

17  *Morella*, 2013 WL 1562032, at *4 (W.D. Wash. Apr. 12, 2013)).

18      For instance, when an insurer accepts an insurance claim but offers to pay a

19  "paltry amount" to settle it, the insurer "denies" the claim under IFCA. *Morella*,

20  2013 WL 1562032, at *3. As courts in this district have repeatedly held:

21          Where the insurer pays or offers to pay a paltry amount that is not in
            line with the losses claimed, is not based on a reasoned evaluation of the
22          facts (as known or, in some cases, as would have been known had the
            insurer adequately investigated the claim), and would not compensate
23

1

2

the insured for the loss at issue, the benefits promised in the policy are effectively denied.

*Id.*; *Heide*, 261 F. Supp. 3d at 1107.

3

4

5

6

7

8

9

10

11

12

13

14

Based on Chamberlain's testimony, a jury could find that Defendant used the wrong method to calculate the value of Plaintiffs' claim because he chose to value the property as unimproved, even though he knew the property included a million-dollar-plus "Mansion." Dkt. No. 17 at 26. Plaintiffs' appraiser, Chamberlain, stated that this method is incorrect and would cause an appraiser to "significantly artificially reduce[]" the property's value, resulting in an undervalued title insurance claim. *See* Dkt. No. 90-4 at 3. Viewing this evidence in the light most favorable to Plaintiffs as the nonmoving party, a factfinder could conclude that Defendant's claims investigation was "not based on a reasoned evaluation of the facts." *See Morella*, 2013 WL 1562032, at *3. Similarly, a jury could reasonably find that a $5,000 offer "would not compensate the insured[s] for the loss at issue." *See id.*

15

16

17

18

19

20

21

22

23

Additionally, in Washington, an insurer's refusal to pay "a demand for coverage reasonably promptly" is "an unreasonable denial of benefits" under IFCA. *Cedar Grove Composting, Inc.*, 2015 WL 3473465, at *6. Here, a jury could conclude that Defendant violated IFCA by delaying payment of Plaintiffs' benefits. The lengthy claims-handling timeline itself, as well as Leonhardi's expert testimony, both create issues of material fact about the reasonableness of Defendant's delay. Indeed, Leonhardi testified that Defendant fell "far short" of industry standards when handling the Jhas' claims, "both from the perspective of timeliness and

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COVERED EASEMENT CLAIM AND BAD FAITH CLAIMS HANDLING - 14

diligence." Dkt. No. 90-3 at 1. Thus, the Court finds that summary judgment on Plaintiffs' IFCA claim is inappropriate.

The Court also finds that Plaintiffs have presented evidence of IFCA damages. IFCA allows Plaintiffs to recover economic and noneconomic damages resulting from the insurer's unreasonable denial of benefits. *Beasley*, 517 P.3d at 505. As detailed above, Plaintiffs have presented evidence of economic damages resulting from Defendant's claims valuation. Thus, summary judgment on IFCA damages is also inappropriate.

### 3.3.3    CPA Claim.

Defendant's CPA argument is unclear. On one hand, Defendant states, "There was No Violation of the Consumer Protection Act." Dkt. No. 86 at 20. On the other hand, Defendant concedes that there are issues of material fact as to whether it violated certain Washington insurance regulations—specifically WAC 284-30-330(2) and (6). *See id*. at 20–21. Under Washington law, when an insurer violates either of these regulations, they commit a per se CPA violation. *See Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 892 (Wash. 2009) (en banc) ("Our legislature has declared that violations of the regulations applicable to [] [the business of insurance] implicate the public interest and constitute a per se violation of the CPA."). Defendant's argument defeats itself. Defendant cannot concede that issues of material fact exist as to whether it complied with Washington insurance regulations while also arguing that it did not violate the CPA as a matter of law. *See id*. Regardless, this Court has already found that issues of material fact preclude summary judgment on CPA liability. Dkt. No. 67.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COVERED EASEMENT CLAIM AND BAD FAITH CLAIMS HANDLING - 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Defendant is not entitled to summary judgment on CPA damages either. Under the CPA, Plaintiffs may recover damages for injuries to their business or property. RCW 19.86.090. The injury need not be substantial, or even quantifiable, to suffice. *Panag*, 204 P.3d at 899–900. ("Monetary damages need not be proved; unquantifiable damages" like "loss of goodwill" may be enough.*); see also Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 825 P.2d 714, 720–21 (Wash. Ct. App. 1992) (time spent dealing with unfair acts rather than running business qualified as CPA injury that the jury could evaluate).

"Investigation expenses . . . resulting from a deceptive business practice sufficiently establish [CPA] injury." *Hopkins v. Integon Gen. Ins. Co.*, No. 21-35196, 2022 WL 851750, at *1–2 (9th Cir. March 22, 2022) (quoting *Panag*, 204 P.3d at 902) (alteration in original). Investigation expenses may include expert expenses. *Id*. Washington law does not require CPA claimants to hire investigative experts before filing a complaint. *Hopkins*, 2022 WL 851750, at *1 (citing *Panag*, 204 P.3d at 902). Rather, as the Ninth Circuit has acknowledged, CPA claimants may incur investigation expenses that constitute "injury" under the CPA after suing— including expert expenses. *See e.g.*, *Hopkins*, 2022 WL 851750, at *1. To be sure, whether expert expenses satisfy the CPA's injury prong does not "turn[] on when [those expenses] are incurred relative to the complaint." *Id*.

Plaintiffs have presented evidence of CPA injury. Plaintiffs' evidence shows that Defendant undervalued their insurance claim, resulting in economic damages. In addition, when viewed in the light most favorable to Plaintiffs, the evidence

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COVERED EASEMENT CLAIM AND BAD FAITH CLAIMS HANDLING - 16

shows that Plaintiffs had to hire experts to investigate Defendant's claims handling and valuation. In short, the evidence supports cognizable CPA injuries.

### 3.3.4    Other Potential Damages on Plaintiffs' Extracontractual Claims.

Throughout this Order, the Court has addressed evidence of damages on Plaintiffs' extracontractual claims in the context of summary judgment. The purpose was to decide whether some, viable evidence of damages existed on each of Plaintiffs' claims sufficient to prevent summary judgment dismissal. Thus, this Order should not be read to limit Plaintiffs' damages to those expressly discussed in this Order. The Court will consider any additional arguments on available damages as needed—likely when it rules on proposed jury instructions and motions in limine.

## 4.  CONCLUSION

Defendant's Motion for Summary Judgment on Covered Easement Claim and Bad Faith Claims Handling, Dkt. No. 86, is DENIED. In addition, the parties must supplement or amend their previously filed Joint Status Report, Dkt. No. 72, within 14 days of this order.

Dated this 31st day of July, 2024.

Jamal N. Whitehead
United States District Judge