1
2
3
4
5
6
7

The Honorable Jamal Whitehead

8
## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

9

10 | LAKHAN JHA and MINAKSHI KUMARI,

No. 2:23-cv-00584-JNW

11 | Plaintiffs,

**SUPPLEMENTAL DECLARATION OF SIDDHARTH JHA**

12
13 | v.

NOTE ON MOTION CALENDAR: APRIL 25, 2025

14 | CHICAGO TITLE INSURANCE COMPANY,

15 | Defendant.

16

17      I, Siddharth Jha, declare under penalty of perjury under the laws of the United States

18 of America, that the following is true and correct:

19      1.      I am over the age of 21, make this declaration based upon my personal

20 knowledge, and am competent to testify on the matters stated.

21      2.      My parents are the Plaintiffs in this matter.

22      3.      I provide this additional declaration to explain Chicago Title's claim that I

23 was legally married in August 2024. I was legally married in August 2024, but that was not

24 an actual wedding. Although I am legally married, I never had an actual wedding. I don't

25 even live with the person that I got married to. In Indian culture, it is the wedding ceremony

26 and the associated religious rituals that make a difference, not the legal marriage. To the

27 extent that Chicago Title is trying to suggest that there is not a wedding taking place because

SUPPLEMENTAL DECLARATION OF
SIDDHARTH JHA - 1
Case No. 2:23-cv-00584-JNW

I was legally married earlier, any such suggestion is completely inaccurate. I did not mention the fact that that I was legally married before because it was an irrelevant point that did not change Plaintiff's unavailability, which is what I understood the Court was asking about.

4.    While I don't have a problem with Chicago Title trying to make their point that I was legally married, I do take issue with the fact that Chicago Title twice publicly filed my Marriage License Application and Washington State Department of Health Marriage Certificate. My issue stems from the fact that the Marriage License Application and Washington State Department of Health Marriage Certificate contains other forms of highly sensitive information that are not readily available on the internet, such as maiden names, places of birth, other family members' places of birth, and the corresponding state file numbers.

5.    Chicago Title contends that the marriage certificate was recorded under 20240823750009. But what Chicago Title did not share is that Chicago Title used their own internal repository to obtain these records. These records are not publicly available on the internet, presumably because of the sensitive information they contain. For example, if one were to go to the King County Recorder's Office website and look up document 20240823750009, it is marked as "NOT VIEWABLE VIA WEB":



SUPPLEMENTAL DECLARATION OF
SIDDHARTH JHA - 2
Case No. 2:23-cv-00584-JNW

6.      The same is true for the marriage application recorded under document 20240807700054, it is marked by the King County Recorders' Office as "NOT VIEWABLE VIA WEB":



7.      Attached as **Exhibit A** is a true and correct copy of a printout of the King County Recorder's website and the documents 20240823750009 and 20240807700054 as it exists on the King County Recorder's website.

8.      Information about my wedding was used to try to explain that my parents will not be available to attend trial. However, as a non-party, I should not have my personal information disseminated over the internet because Chicago Title chose to publicly file documents that are not readily accessible on the internet.

9.      In light of Chicago Title's filing, Plaintiff's counsel asked Chicago Title to seal the material it filed about non-parties and Chicago Title's counsel refused to do so.

10.     Attached as **Exhibit B** is a true and correct copy of the unpublished decision from Washington Court of Appeals Division II in *Matthew Cleverley v. Carole Campell*, 163 Wn. App. 1022, 2011 WL 3907127 (2011).

DATED this 2nd day of May, 2025 in Seattle, Washington.

_____
Siddharth Jha

SUPPLEMENTAL DECLARATION OF
SIDDHARTH JHA - 3
Case No. 2:23-cv-00584-JNW

SCUDERI LAW OFFICES PS
108 22nd Ave SW, Suite 24
Olympia, WA 98501
P: (360) 534-9183

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused true and correct copies of the foregoing document to be served upon the following, at the addresses stated below, via the method of service as indicated:

FIDELITY NATIONAL FINANCIAL, INC.

Matthew Cleverley
Daniel Womac
701 Fifth Avenue, Suite 2710
Seattle, WA 98104
Matthew.Cleverley@fnf.com
Daniel.Womac@fnf.com
*Attorneys for Defendants Chicago Title*

☐ E-mail
☐ U.S. Mail
☒ E-filing

DATED this 2nd day of May, 2025 in Olympia, Washington.

*/s/ Viki Sanchez*
Viki Sanchez
Paralegal

SUPPLEMENTAL DECLARATION OF
SIDDHARTH JHA - 4
Case No. 2:23-cv-00584-JNW

# EXHIBIT A





**20240807700054**
**Page-1**
**IS NOT VIEWABLE VIA WEB**





King County
cial Records Search

Home    Search    Support    King County    King County Public Records    King County Parcel Viewer    Log On

**20240823750009**

**Page-1**

**IS NOT VIEWABLE VIA WEB**

Unofficial Copy

20240823750009
Page-1
IS NOT VIEWABLE VIA WEB



# EXHIBIT B

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| MATTHEW CLEVERLEY, | No. 40788-4-II |
| Appellant, | |
| v. | |
| CAROLE CAMPBELL, | UNPUBLISHED OPINION |
| Respondent. | |

Worswick, A.C.J. — Matthew Cleverley appeals an order vacating his default judgment against Carol Campbell, arguing that she (1) failed to present clear and convincing evidence that there was lack of service, (2) failed to make out a prima facie defense as to each of his claims, (3) did not demonstrate that her failure to appear was occasioned by mistake, inadvertence, surprise or excusable neglect, and (4) failed to offer any evidence to support relief based on damages. Carol[1] requests attorney fees on appeal under RAP 18.1 and CR 11. We affirm the trial court's order and award Carol attorney fees on appeal.

## FACTS

Matthew Cleverley is an attorney in Washington. Colleen Campbell is Cleverley's personal friend and a former client. In 2008, Colleen filed for divorce from her husband, Michael Campbell, in Indiana. Cleverley was admitted as co-counsel in that case, *pro hac vice*, to help depose members of Michael's family who lived in Washington.

---

[1] We refer to all members of the Campbell family by their first names for the sake of clarity. We intend no disrespect.

40788-4-II

One of the witnesses Cleverley deposed was Carol Campbell, Michael's mother.  Carol

testified as follows:

> [CLEVERLEY]:  Have you talked with [Colleen] since she filed for divorce?
> [CAROL]:  I have not.
> . . . .
>  [CLEVERLEY]:  Okay.  So, did—based on (sic) Michael said to you, your belief
> is that Colleen and I were having an affair?
> [CAROL]:  Yeah, I think so.  Uh-huh.
> [CLEVERLEY]:  Okay.
> [CAROL]:  Are you?  Are you?  Do I get to ask you questions?
> [CLEVERLEY]:  No, but I—I'm not quite done yet, but we'll see if maybe your
> questions get answered by the questions I ask.
>     So did you discuss this with the rest of your family members as well?  What
> I'm referring to is—is Michael's suggestion that Colleen and I were having an
> affair.
> [CAROL]:  I would say yes.  I'd say it's pretty commonly accepted, yes, that
> Colleen and you are traveling together, and yes, you are.
> [CLEVERLEY]:  Okay.  And who else have you discussed this with?
> [CAROL]:  I don't know.  I don't know which one of my children, which—my
> children.  I've discussed it with my children, because we're heartbroken over it all.
> [CLEVERLEY]:  And was this the topic that was discussed on the 26th at the
> family gathering?
> [CAROL]:  I don't remember that that came up.  I really don't remember if that
> came up at all.  I do—Colleen's behavior with the family did come up.  I do know
> that.  But I don't remember that your name came up, Matt.
> . . . .
>  [CLEVERLEY]:  And do you think less of me because of the statements that
> Michael has told you?
> [CAROL]:  Yes, I do.
> [CLEVERLEY]:  And do you think that that is an attempt to discredit me in a
> professional capacity with Colleen?
> [CAROL]:  No, I don't.  I think facts are facts.  And there's facts.  I don't think
> any way it discredits you in a professional way, because facts are just facts.
> . . . .
>  [CLEVERLEY]:  And do you think that Michael's comments about me having an
> affair with Colleen damaged has (sic) my reputation with your children?
> [CAROL]:  Well, I don't think my children really care, to be honest.  They don't
> care about your reputation.

Clerk's Papers (CP) at 20-37.

40788-4-II

On October 31, 2009, Cleverley had a process server serve a summons and complaint on Carol at her residence in Spokane, Washington.  The complaint alleged claims of defamation, the tort of outrage and intentional interference with a business relationship.  The process server left the summons and complaint with a young man who was at Carol's property.  The young man refused to provide his name; the process server described him as: "[a] male approx. 18-21 years of age 5'8"-5'10" in height weighing 120-140 lbs."  CP at 7.

On November 30, 2009, Cleverley filed his complaint and a motion for default judgment in Kitsap County Superior Court.  The complaint alleged $75,000 in damages for each claim.  Carol failed to appear and the court entered a default judgment in the amount of $225,000.  The court also entered a writ of garnishment against Carol.

When Carol's employer notified her that they had to garnish her wages, Carol filed a motion to vacate the default judgment requesting relief under CR 60(b)(1) and CR 60(b)(4).[2]  Carol filed an affidavit in support of her motion stating that she had never received the summons and complaint and that if she had received a summons and complaint, she would have responded to it.  And with regard to the substance of Matthew's claims, Carol further averred:

The subject of Mr. Cleverley came up on September 21, 2009, when our entire

_____

[2] CR 60(b) provides, in relevant part:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1)  Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
. . .
(4)  Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
(5)  The judgment is void[.]

40788-4-II

family met in Seattle to see Wicked.  Nobody in the family was very interested in whether Matthew and Colleen were having an affair, but his name did come up.

CP at 49.

On April 29, 2010, the trial court vacated the default judgment and made the following written findings of fact:

> 1. The Complaint for Damages for Defamation, Outrage, and Intentional Interference with Business Relationships was filed against the Defendant, Carol Campbell, in Kitsap County, on November 30, 2009.
> 2. An Affidavit of Service was filed on the same date stating a Summons and Complaint was served upon Carol Campbell by leaving the documents with John Doe, a male approximately 18-21 years of age.
> 3. An Order of Default and Default Judgment were entered on December 4, 2009, in the amount of $225,335.00.
> 4. Carol Campbell would have responded to a $225,000 lawsuit had she received the papers personally.  Service was made on an unknown male whose status is not known.
> 5. Carol Campbell has made a substantial showing to support her contention there is no prima facie case for defamation.
> 6. The Court finds no substantial hardship will occur to the Plaintiff in setting aside the judgment and setting the matter for trial.

CP at 70-71.  In addition, the trial court made the following oral findings:

> Is there a good possibility that if this thing goes to litigation that the Defendant, Ms. Campbell, will prevail? . . . . Is there substantial evidence to support at least a *prima facie* defense to the claim?  I think there is.  From what I read, Ms. Campbell is saying, "Speaking among family members is all I ever did and you took this—these things from a deposition where I admitted that I talked about these things," but I think that is a *prima facie* defense to defamation, and I'll find that it is.
>     The moving party's failure to appear was occasioned by mistake, inadvertence, surprise, and excusable neglect.  I was surprised that there weren't any—I'm not sure a boarder in your house is the same thing as a resident. . . . [B]ut I think that it is inadvertence, surprise or excusable neglect when it wasn't served on her, and I accept the explanation. . . .  I think she did act with due diligence after the notice of the entry of default.  The first time she knew about it was when she was garnished.
>     And, also, Mr. Cleverley, I don't see any substantial hardship that'll be imposed on you as the Plaintiff if the matter's allowed to go to trial on the merits.

4

40788-4-II

    And, so, for those reasons I'm going to grant the order setting aside the default
    and quashing the garnishment.

Report of Proceedings at 16-17.  The trial court vacated the default judgment under CR 60(b)(1)

based on inadvertence.  Cleverley appeals.

ANALYSIS

Standard of Review

    We review an order vacating a default judgment for abuse of discretion.  *Little v. King*,

160 Wn.2d 696, 702, 161 P.3d 345 (2007).  A trial court abuses its discretion when it acts on

untenable grounds or for untenable reasons.  *Little*, 160 Wn.2d at 703.  Generally, default

judgments are not favored in Washington based on an overriding policy that prefers parties to

resolve their disputes on the merits.  *Little*, 160 Wn.2d at 703.  We assess the trial court's

decision in light of this case's particular facts and circumstances; and we are less likely to reverse

a trial court decision that sets aside a default judgment than a decision that does not.  *Showalter v.*

*Wild Oats*, 124 Wn. App. 506, 510-11, 101 P.3d 867 (2004).

Service of Process

    Cleverley contends that the trial court abused its discretion when it vacated the default

judgment because Carol did not present clear and convincing evidence that there was lack of

service.[3]  But clear and convincing evidence showing lack of service is required only when the

_____

[3] Cleverley argues that Carol's brief should be stricken from our consideration under RAP 10.3,
RAP 10.4, and RAP 10.7 because she improperly cited to the record in her brief.  In his reply
brief, Cleverley points to several specific instances where Carol either improperly cited to the
record or failed to provide any citation.  Although RAP 10.3(6) requires citations to the record,
RAP 10.7 makes any decision to strike briefs a discretionary one.  We decline Cleverley's
invitation to strike Carol's brief from consideration.

5

40788-4-II

motion to vacate a default judgment asserts that the judgment is void under CR 60(b)(5).  *See*

*Woodruff v. Spence*, 88 Wn. App. 565, 571, 945 P.2d 745 (1997).  Here, Carol moved to vacate

the default judgment under CR 60(b)(1), not CR 60(b)(5).  In other words, Carol did not allege

that the service did not take place, thus, rendering the judgment against her void under CR

60(b)(5).  Rather, she argued under CR 60(b)(1) that she never received the summons and

complaint from the young man it was served on.  The trial court concluded that Carol's failure to

appear was caused by inadvertence and vacated the default judgment pursuant to CR 60(b)(1).

Because it is unnecessary to determine whether the service was proper, we decline to address

Cleverley's arguments about a requirement of clear and convincing evidence of the service of

process.

Sufficiency of the Supporting Affidavit

Cleverley further argues that Carol's affidavit failed to allege facts that establish a prima

facie defense to each of his claims.  Although literal compliance with CR 60(e)(1) would require

that all facts supporting a prima facie defense be set out in the supporting affidavits, the trial court

may still consider all the evidence properly before it to determine whether it has sufficient

evidence of a meritorious defense to justify vacating the judgment.  *Griggs v. Averbeck Realty*

*Inc.*, 92 Wn.2d at 576, 583, 599 P.2d 1289 (1979).  The trial court must balance the requirement

that each party follow procedural rules with a party's interest in a trial on the merits.  *Little*, 160

Wn.2d at 703.  The insufficiency of Carol's affidavit is not fatal so long as the trial court had

additional evidence before it to consider.  *Griggs*, 92 Wn.2d at 582-83.  Thus, Cleverley's

argument on this point fails.

40788-4-II

Vacating the Order Under CR 60(b)(1)

Cleverley also argues that the trial court abused its discretion when it vacated the order under CR 60(b)(1) because Carol failed to present a prima facie defense to his claims or prove that her failure to appear was due to mistake, inadvertence, surprise or excusable neglect. Cleverley asserted three claims against Carol: defamation, outrage, and intentional interference with a business relationship. These claims are based on statements that Carol made to her family members about Cleverley and his relationship with Colleen. Carol argues that because she made the statements about Cleverley only to close family members, the elements of each particular claim cannot be met. Moreover, Carol asserts irregularity in obtaining the judgment or order as grounds for vacating the default judgment.

CR 60(b)(1) allows default judgments to be set aside in the case of mistake, inadvertence, surprise, excusable neglect, or irregularity in obtaining a judgment or order. The trial court considers multiple factors to determine whether the moving party is entitled to have the default judgment vacated. *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968). The two factors relevant to this case are: (1) that there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; and (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect. *White*, 73 Wn.2d at 352.

To determine whether the moving party has demonstrated a prima facie defense, the trial court must review the evidence and all reasonable inferences in the light most favorable to the moving party. *Rosander v. Nightrunners Transport Ltd.*, 147 Wn. App. 392, 404, 196 P.3d 711

7

40788-4-II

(2008).  The moving party has presented "a prima facie defense if it produces evidence that, if later believed by the trier of fact, would constitute a defense to the claims presented." *Rosander*, 147 Wn. App. at 404-05.

Prima Facie Defense

1. *Defamation*

A defamation claim requires falsity, an unprivileged communication, fault, and damages. *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005).  The statement must not only be false, but it must also be defamatory.  For a statement to be defamatory, it must "harm the reputation of another as to lower him in the estimation of the community or to deter third persons from dealing with him."  *Right-Price Recreation LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 382, 46 P.3d 789 (2002) (quoting Restatement (Second) of Torts § 559 (1977)).  Washington courts have recognized that there are some occasions where defamatory communications between family members are privileged if the communications are published without malice, in good faith, and in an honest belief of their truth upon reasonable grounds for such belief.  *Twelker v. Shannon & Wilson Inc.*, 88 Wn.2d 473, 478, 564 P.2d 1131 (1977) (citing Restatement (First) of Torts , §§ 593-598 at 241-60 (1938)).

Cleverley maintains that Carol's statements are false and that he never had a sexual relationship with Colleen.  But the record supports a finding that Carol only made statements about Cleverley to members of her immediate family in the context of discussing Michael's divorce.  Carol's deposition shows that Carol's family members were not particularly concerned about Cleverley or his reputation.  Carol established a prima facie defense to Cleverley's

40788-4-II

defamation claim here.

40788-4-II

### 2. *Outrage*

The tort of outrage includes three elements: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff." *Reid v. Pierce County*, 136 Wn.2d 195, 202, 961 P.2d 333 (1998). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Reid*, 136 Wn.2d at 202 (emphasis omitted) (quoting *Grimsby v. Samson*, 85 Wn.2d 52, 59-60, 530 P.2d 291 (1975)). In addition, the plaintiff must actually be present at the time the tortious conduct occurred. *Reid*, 136 Wn.2d at 202-03.

Here, Cleverley was not present when Carol made any of the allegedly harmful statements about his relationship with Colleen and his absence is a conclusive defense. *Reid*, 136 Wn.2d at 203. Carol presented a prima facie defense to Cleverley's outrage claim here.

### 3. *Intentional Interference with Business Relationships*

To establish a claim for interference with a business relationship, the plaintiff must show "(1) the existence of a valid contractual relationship or business expectancy; (2) the defendant's knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) the defendant's interference for an improper purpose or by improper means; and (5) resulting damage." *Koch v. Mutual of Enumclaw Ins. Co.*, 108 Wn. App. 500, 506, 31 P.3d 698 (2001). The "plaintiff must show not only that the defendant intentionally interfered with his business relationship, but also that the defendant had a 'duty of non-interference; *i.e.*, that he interfered for an improper purpose . . . or . . . used

10

40788-4-II

improper means . . .'" *Pleas v. City of Seattle*, 112 Wn.2d 794, 804, 774 P.2d 1158 (1989) (quoting *Straube v. Larson*, 287 Or. 357, 361, 600 P.2d 371 (1979)).

Carol also contends that she did not intend to interfere with Cleverley's professional relationship with Colleen because she only made statements to her immediate family in the context of discussing Michael's divorce. This assertion is supported by the facts laid out in Carol's deposition. And the record does not support Cleverley's assertion that Carol made her statements with an improper purpose or by using improper means. Carol has established a prima facie defense to the intentional interference claim.

Failure to Timely Appear

Cleverley argues that Carol did not prove that her failure to appear was occasioned by mistake, inadvertence, surprise or excusable neglect as required under CR 60(b)(1). The trial court specifically found that Carol's failure to appear was the result of inadvertence because although the summons and complaint had been served at her house, Carol never received it. Further, the trial court found that, had Carol received the summons and complaint she would have responded appropriately. The trial court based its reasoning on Carol's affidavit, as well as the other evidence she submitted to support her motion to vacate. The trial court did not abuse its discretion and we affirm.

Moreover, CR 60(b)(1) also permits a trial court to vacate a default judgment for irregularity in obtaining a judgment. "A default judgment entered in a county of improper venue is valid but will on motion be vacated for irregularity pursuant to rule 60(b)(1)." CR 55(c)(2). Venue is proper in the county where the cause of action arose or in the county where the

40788-4-II

defendant resides.  RCW 4.12.020.

Cleverley filed his complaint in Kitsap County Superior Court even though Carol resided in Spokane County at the time.  Cleverley's complaint was based on statements Carol made to members of her family during a family gathering in Seattle, in King County.  Because Kitsap County was neither the county where the cause of action arose or the county where Carol resided at the time the action commenced, venue was not proper.  Carol has satisfied the irregularity in obtaining judgment requirement under CR 60(b)(1).  RCW 4.12.020.  Accordingly, we affirm the trial court's order vacating the default judgment on these additional grounds.

## Damages

Cleverley finally argues that Carol failed to provide any evidence that disputes damages. A prima facie defense to damages is required only when a party moves to set aside the default judgment on the basis of damages.  *Little v. King*, 160 Wn.2d at 704 (holding that defendants were required to present a prima facie defense to damages because they were contesting *only* the amount of damages, not liability).  Here, Carol moved to set aside the default judgment on the basis of liability.  As such, she had no burden to produce a prima facie defense to the damages and Cleverley's argument fails.

40788-4-II

## Attorney Fees

Carol requests attorney fees on appeal under RAP 18.1 and CR 11. Carol argues that the appellant's brief Cleverley signed was not grounded in fact or existing law and was filed with the sole purpose to harass Carol. Based on the frivolity of this appeal, we grant Carol reasonable attorney fees.

Reasonable attorney fees are recoverable on appeal if allowed by statute, rule, or contract, and the request is made pursuant to appellate rules governing attorney fees and expenses. RAP 18.1(a); *Pierce County v. State*, 159 Wn.2d 16, 50, 148 P.3d 1002 (2006). Additionally, we have the authority to grant attorney fees under RAP 18.9 for a frivolous appeal, among other reasons. An appeal is frivolous if no debatable issues are presented and no reasonable possibility of reversal exists. *Building Industry Ass'n of Wash. v. McCarthy*, 152 Wn. App 720, 746, 218 P.3d 196 (2009).

In this case, Cleverley filed a brief without facts supporting his argument that Carol failed to present a prima facie defense to his claims against her. In addition, Cleverley's argument is largely based on the wrong standard of law under CR 60(b)(1) and he offers no argument as to why we should have applied the standards from CR 60(b)(5) to this appeal, as he suggests. In light of this, Cleverley's appeal is frivolous. Therefore, we grant Carol's request for attorney fees.

40788-4-II

We affirm the trial court's order vacating the default judgment against Carol and grant her request for reasonable attorney fees under RAP 18.1.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
                                    Worswick, A.C.J.

We concur:

_____
Armstrong, J.

_____
Hunt, J.