1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Honorable Jamal Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAKHAN JHA and MINAKSHI KUMARI,

          Plaintiff,

    v.

CHICAGO TITLE INSURANCE
COMPANY,

          Defendant.

No. 2:23-cv-00584-JNW

**JOINT SUBMISSION OF
DEPOSITION DESIGNATIONS**

## I.    DEPOSITION DESIGNATIONS

Pursuant to LCR 32(e) and the Court's chamber procedures 1.9, Plaintiff Lakhan Jha and Minakshi Kumari ("Plaintiff") and Defendant Chicago Title Insurance Company ("Chicago Title") submit this Joint Submission of Deposition Designations for the November 29, 2022 deposition of Chicago Title's Rule 30(b)(6) representative, Thomas P. Hayden. Plaintiff's deposition designations are highlighted in yellow. Chicago Title's designations are highlighted in green. The excerpted transcript is attached as **Exhibit A**.

The following deposition designations in page:line format may be admitted as evidence for trial. The rows that have been highlighted below as yellow are Plaintiff's designations. The rows that have been highlighted below as green are Chicago Title's counter deposition designations.

JOINT SUBMISSION OF DEPOSITION
DESIGNATIONS - 1
Case No. 2:23-cv-00584-JNW

| Page/Ln. No. | Objection | Response |
|---|---|---|
| 22:22-23:4 | 23:5-13 should be read in conjunction | Plaintiff's Response: Plaintiff objects to Chicago Title's proposed addition on the basis of relevance and jury confusion because WAC 284-30-330(12) provides that an insurer cannot hold up resolution of one claim in order to influence resolution of other claims. |
| 23:5-13 | Plaintiff's Objection: Plaintiff objects to Chicago Title's proposed addition on the basis of relevance and jury confusion because WAC 284-30-330(12) provides that an insurer cannot hold up resolution of one claim in order to influence resolution of other claims. | Defendants' Response: Under FRCP 32(a)(6) If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts. |
| 23:14-25:13 | 25:14-20 should be read in conjunction | Plaintiff's Response: Plaintiff objects to Chicago Title's proposed addition on the basis of relevance and jury confusion because WAC 284-30-330(12) provides that an insurer cannot hold up resolution of one claim in order to influence resolution of other claims. |
| 25:14-20 | Plaintiff's Objection: Plaintiff objects to Chicago Title's proposed addition on the basis of relevance and jury confusion because WAC 284-30-330(12) provides that an insurer cannot hold up resolution of one claim in order to influence resolution of other claims. | Defendants' Response: Under FRCP 32(a)(6) If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts. |
| 25:21-31:15 | 31:16-37:2 should be read in conjunction | No objection |
| 31:16-32:2 | No objection | No objection |
| 33:9-17 | No objection | No objection |
| 34:24-35:12 | Objection. Relevance | Plaintiff's Response: Shows the witness was unaware of the type of appraisal ordered by |

JOINT SUBMISSION OF DEPOSITION
DESIGNATIONS - 2
Case No. 2:23-cv-00584-JNW

SCUDERI LAW OFFICES PS
108 22nd Ave SW, Suite 24
Olympia, WA 98501
P: (360) 534-9183

| Page/Ln. No. | Objection | Response |
|---|---|---|
| | | Chicago Title and resorted to Googling it during his deposition despite being an attorney. |
| 84:11-21 | 84:22-85:12 should be read in conjunction | Plaintiff's Response: Plaintiff objects to Chicago Title's proposed addition on the basis of relevance and jury confusion because WAC 284-30-330(12) provides that an insurer cannot hold up resolution of one claim in order to influence resolution of other claims. |
| 84:22-85:12 | Plaintiff's Objection: Plaintiff objects to Chicago Title's proposed addition on the basis of relevance and jury confusion because WAC 284-30-330(12) provides that an insurer cannot hold up resolution of one claim in order to influence resolution of other claims. | Defendants' Response: Under FRCP 32(a)(6) If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts. |
| 95:15-96:23 | No objection | No objection |
| 100:24-102:8 | No objection | No objection |
| 120:18-129:13 | No objection | No objection |
| 130:20-131:3 | No objection | No objection |
| 131:17-132:19 | No objection | No objection |

DATED this 5th day of September, 2025.

SCUDERI LAW OFFICES PS


By:  /s/ Joseph Scuderi
Joseph Scuderi, WSBA #26623
*Attorneys for Plaintiff*

FIDELITY NATIONAL LAW GROUP


By:  /s/Matthew Cleverley
Matthew R. Cleverley, WSBA #32055
Daniel A. Womac, WSBA #36394
*Attorneys for Defendant Chicago Title Insurance Company*

JOINT SUBMISSION OF DEPOSITION DESIGNATIONS - 3
Case No. 2:23-cv-00584-JNW

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on this date I caused true and correct copies of the foregoing

3  document to be served upon the following, at the addresses stated below, via the method of

4  service as indicated:

5

6  FIDELITY NATIONAL FINANCIAL, INC.

7  Matthew Cleverley
   Daniel Womac                           ☐   E-mail
8  701 Fifth Avenue, Suite 2710           ☐   U.S. Mail
   Seattle, WA 98104                      ☒   E-filing
9  Matthew.Cleverley@fnf.com
   Daniel.Womac@fnf.com
10 *Attorneys for Defendants Chicago Title*

11

12 DATED this 5th day of September, 2025 in Olympia, Washington.

13

14                              */s/ Viki Sanchez*
                                Viki Sanchez
15                              Paralegal

16

17

18

19

20

21

22

23

24

25

26

27

JOINT SUBMISSION OF DEPOSITION
DESIGNATIONS - 4
Case No. 2:23-cv-00584-JNW

SCUDERI LAW OFFICES PS
108 22nd Ave SW, Suite 24
Olympia, WA 98501
P: (360) 534-9183

# EXHIBIT A

Case 2:23-cv-00584-JNW    Document 186    Filed 09/05/25    Page 6 of 46

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
 1        IN THE SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

 2   _____

 3   LAKHAN JHA and MINAKSHI        )
     KUMARI,                        )
 4                                  )
             Plaintiffs,            )
 5                                  )        NO.  22-2-03741-5 SEA
     vs.                            )
 6                                  )
     CHICAGO TITLE COMPANY OF       )
 7   WASHINGTON and CHICAGO         )
     TITLE INSURANCE COMPANY,       )
 8                                  )
             Defendants.            )
 9   _____
```

CERTIFIED TRANSCRIPT

```
10

11           DEPOSITION UPON ORAL EXAMINATION OF
                    THOMAS PAUL HAYDEN
12                  November 29, 2022
                      (Via Zoom)
13                 PAGES 1 through 135
     _____

14

15

16                    Taken Before:

17

18           Kristin D. Manley, RPR, CCR

19        Certified Stenographic Court Reporter

20                       for

21        Capitol Pacific Reporting, Inc.

22               (800) 407-0148

23           www.capitolpacificreporting.com
24      scheduling@capitolpacificreporting.com

25
```



LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
 1

 2

 3                          APPEARANCES

 4
    FOR THE PLAINTIFFS:        JOE SCUDERI
 5                            ATTORNEY AT LAW
                              SCUDERI LAW OFFICES, P.S.
 6                            108 22ND AVENUE SW, SUITE 24
                              OLYMPIA, WA 98501
 7                            PH:  (360) 534-9183
                              joescuderi@scuderilaw.com
 8

 9  FOR THE DEFENDANTS:        ERIKA NOHAVEC
                              MATTHEW CLEVERLEY
10                            ATTORNEYS AT LAW
                              701 FIFTH AVENUE, SUITE 2710
11                            SEATTLE, WA 98104
                              matthew.cleverley@fnf.com
12                            erika.nohavec@fnf.com

13
    ALSO PRESENT:              LAKHAN JHA
14                            SIDHARTHA JHA
                              ANNELIESE CZARNICK
15

16

17

18

19

20

21

22

23

24

25
                                                 Page  2
```



scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
 1                      EXAMINATION INDEX

 2
     BY                        EXAMINATION    RE-EXAMINATION
 3
     MR. SCUDERI                     5
 4

 5
                        EXHIBIT INDEX
 6

 7   NO.    DESCRIPTION                MARKED      IDENTIFIED

 8    1     Notice of Deposition      134           6
           of Chicago Title
 9         Insurance Company

10    2     Title Policy              134           7

11    3     The Value of              134          18
           Title Insurance, by
12         Tom Hayden, Esq.
           and Jordan Kelner, Esq.
13
      4     Status Report             134          19
14
      5     Declaration of           134          25
15         Easement

16    6     Appraisal dated          134          34
           August 24, 2022
17
      7     Declaration of           134          36
18         Covenant 2001

19    8     Declaration of           134          43
           Covenant 2004
20
      9     Notice of King           134          47
21         County Code Violation
           Case Number dated
22         March 15, 2010

23   10     Notice of King           134          71
           County Code Violation
24         Case Number dated
           April 1, 2011
25
```


Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
1                      EXHIBIT INDEX
                        (Continued)
2

3   NO.     DESCRIPTION               MARKED      IDENTIFIED

4   11      Coverage Letter dated      134           81
            August 23, 2021
5
6   12      Claims Handbook            134           94

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```


Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
1                    BE IT REMEMBERED that on Tuesday, November 29,

2         2022, at 12:09 p.m. via Zoom videoconference, appeared

3         the above-named witness before Kristin D. Manley,

4         Washington State Certified Stenographic Court Reporter,

5         residing at Montesano, authorized to administer oaths

6         and affirmations pursuant to RCW 5.28.010.

7                    WHEREUPON, the following proceedings were had,

8         to wit:

9

10        THOMAS PAUL HAYDEN,            having been first duly
                                         sworn by the
11                                       Stenographic Court
                                         Reporter testified as
12                                       follows:

13

14

15                              EXAMINATION

16

17

18        BY MR. SCUDERI:

19   Q    Mr. Hayden, do you -- do you prefer being called

20        Mr. Hayden or Tom?

21   A    You can -- you can go by Tom, that's fine.

22   Q    Thank you.  Could you please state and spell your name

23        for the record?

24   A    My name is Thomas Paul Hayden, T-H-O-M-a-S P-a-U-L

25        H-a-Y-D-E-N.
```



Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
 1   Q     Okay.

 2   A     So I guess to the extent that there is still reserves,

 3         then, I guess, they could still be called that.

 4   Q     Are there any reserves, do you know?

 5   A     No.  The reserves are at zero right now, but to the

 6         extent that they previously were reserves, I mean, I

 7         guess you could still call them payments even though

 8         they are more like an actual loss rather than a reserve

 9         for a loss.

10   Q     Okay.  And you were assigned this claim in March 2022;

11         correct?

12   A     Correct.

13   Q     Okay.  Who is Dylan Folchert?

14   A     He is another claims attorney on this team.

15   Q     Is he still involved in this matter, or was he

16         involved before you were -- it was assigned to you?

17   A     He was in between Mindy and me.  He only had it for a

18         little over a month or two.  When Mindy left, all her

19         claims got transferred out to other people; so Dylan

20         worked on it for a while, but then they decided to move

21         it to me instead because I have more experience.

22   Q     Okay.  Do you -- when was the claim first made by the

23         Plaintiffs in this matter to Chicago Title?

24   A     I believe the claim letter was sent March 22, 2021.

25   Q     Okay.  And do you know why it took so long -- and then
```

Plaintiff's Designation: 22:22-23:4

Chicago Title's Obj.: 23:5-13 should be read in conjunction

Plaintiff's Response: Plaintiff objects to Chicago Title's proposed addition on the basis of relevance and as confusion because WAC 284-30-330(12) provides that an insurer cannot hold up resolution of one claim in order to influence resolution of other claims.

Capitol Pacific Reporting, Inc.    scheduling@capitolpacificreporting.com    800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1    you recently said there was one claim that was -- that

2    you -- that Chicago Title acknowledged that as a loss

3    and assigned $5,000 to it; correct?

4  A  Correct.

5  Q  When -- why the delay?  Why did it take so long from

6    the initial claim all the way until that

7    determination?

8  A  Well, it is important to remember this isn't really one

9    claim, it is 24.  The insured submitted 12 things

10   initially, and most claims that come in are only about

11   one document, maybe two.  So the fact that we had to do

12   12 times the amount of work for a regular claim just,

13   kind of, naturally requires more research and time.

14 Q  Okay.  And when was the -- when was the claim

15   determined that there was a loss related to

16   that -- that one item?

17 A  So they -- they got a survey sometime in September 2021.

18   After that, that means that there was coverage for the

19   one -- the one easement at issue.  To determine the

20   loss, you need to get an appraisal to figure out what

21   the difference in value is with or without the easement

22   at issue.  So we got the appraisal -- I think we hired

23   the appraisal -- appraiser in June 2022, and he came

24   with -- he came up with this report in August 2022.

25 Q  Okay.

Chicago Title's
Designation:
23:5-13

Plaintiff's Objection:
Plaintiff objects to
Chicago Title's
proposed addition
on the basis of
relevance and jury
confusion because
WAC 284-30-330(12)
provides that an
insurer cannot
hold up resolution
of one claim in
order to influence
resolution of other
claims.

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1   A    So that's when we knew when the loss -- what the loss

2        was.

3   Q    Why did you -- when you said "they got a survey," who

4        is "they"?

5   A    Mindy.

6   Q    Okay.  Why the delay in getting the survey?

7   A    She got the survey shortly after she sent her first

8        claim letter.  It just -- it takes a good six to eight

9        weeks to get a survey.

10  Q    Okay.  So when did she send her first claim letter?

11  A    Her coverage letter was sent August 23, 2021.

12  Q    Okay.  And when did she get the survey?

13  A    It was late -- late September.  Let me -- let me pull

14       that up.  Yeah, the survey is dated September 23rd,

15       2021.  I don't know when she got it.  I don't know when

16       it was delivered to her, but it would've probably been

17       around that time.

18  Q    Okay.  And when was -- when were the insureds informed

19       that there was, in fact, a loss on that item and that

20       the damages were, according to the insurance company,

21       $5,000?

22  A    I sent them a letter in August this year.  Let me find

23       out when that was sent.

24            Okay.  That was August 24, 2022.

25  Q    Okay.  So why the delay?

Plaintiff's
Designation:
23:14-25:13

Chicago Title's
Obj.: 25:14-20
should be read
in conjunction

Plaintiff's Response:
Plaintiff objects to
Chicago Title's
proposed addition
on the basis of
relevance and jury
confusion because
WAC 284-30-430(12)
provides that an
insurer cannot hold
up resolution of one
claim in order to
influence resolution
of other claims

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1    A    Between what?

2    Q    Mindy getting the survey -- when did -- let me ask you

3         this:  When did Chicago Title recognize that there was

4         a covered loss on that particular claim item?

5    A    The easement was -- would have been recognized for

6         coverage probably around the time that Mindy got the

7         survey back from the surveyor.

8    Q    When was that?

9    A    That was in September 23, 2021.

10   Q    Okay.  And then you only informed the insureds that

11        there was a loss in August of the 2022?

12   A    That was after the appraisal.  That's when we knew what

13        the loss was.

14   Q    Okay.

15   A    We knew what the coverage was probably around September

16        2021, but in between that time, the insured submitted 12

17        more claims that all required review and might have

18        changed the analysis for the appraiser.  So there was

19        no -- no way to determine the entire loss until all of

20        the coverage had been determined.

21        MR. SCUDERI:  I'm going to mark as Exhibit 5 the

22        declaration of easement that was recorded in 2000.

23        BY MR. SCUDERI:

24   Q    Now, have you seen this document before?

25   A    Yes.

Page 25

Chicago Title's
Designation
25:14-20

Plaintiff's Objection:
Plaintiff objects to
Chicago Title's
proposed addition
on the basis of
relevance and jury
confusion because
WAC 284-30-330(12)
provides that an insurer
cannot hold up
resolution of one
claim in order to
influence resolution
of other claims.

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1  Q    Okay.  Is this the -- the easement that Chicago Title

2       recognized as a covered loss on this property?

3  A    I believe so.  Let me check the recording number I think

4       was in the letters.

5  Q    Take your time.

6  A    Yes, this is the one.

7  Q    Okay.

8           MS. NOHAVEC:  Mr. Scuderi, could you just verify

9       for me which document you are looking at again?  Sorry.

10      Is it the 2000 easement?

11          MR. SCUDERI:  Correct.

12          MS. NOHAVEC:  Thank you.

13      BY MR. SCUDERI:

14  Q    Which covered risks did Chicago Title determine this

15      easement fell under, under the title policy?

16  A    It would definitely come under Cover Risk 1.  That's

17      kind of like -- the first one is -- I think it says,

18      "Someone else owns an interest in your title."  I mean,

19      an easement is an interest in your title to some extent.

20      It would also arise under Cover Risk 4.  I guess

21      Number 2 as well to the extent it is a contract.  Those

22      are the main ones.

23  Q    None of the other items listed?  I mean, I think there

24      is what?  32 of them?

25  A    Yeah, there are 32 of them.  I mean, some of them get

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
 1          kind of in the weeds about stuff, but as far as
 2          easements go, the main ones you have to look at are
 3          Number 4 and Number 1.
 4    Q     And Number 2?
 5    A     And Number 2.  I mean, it is a contract, but there is a
 6          little bit of overlap between them but . . .
 7    Q     Wouldn't it fall under Number 5, too?
 8    A     To the extent it is a limit.  I dont know, usually
 9          easements are additives -- or they're not exclusive; so
10          they don't really -- they don't actually limit the use
11          so much as they just grant the use to someone else.
12    Q     Well, if you are the servient estate, your -- your
13          rights are impaired by the easement; correct?
14    A     Sure.
15    Q     Would that be fair to call that a limit?
16    A     You can classify it as that, sure.
17    Q     One of the -- take a minute and read the 32 items
18          listed just to confirm that none of those apply to
19          this particular easement, or if they do apply, let me
20          know.  I mean, we can take a break to give you a
21          chance because it is about three pages.
22    A     Yeah, I mean, I can -- I can do that if you want.
23    Q     Yes.
24    A     The thing is there is no -- there is no double indemnity
25          under the policy.  So once something is covered under
```

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
 1        one covered risk, it is not like you get more coverage
 2        by having it under two covered risks.
 3   Q    I'm not suggesting that's the case.
 4   A    Okay.
 5   Q    But if you can just indulge me and do this.  I just
 6        want to confirm that the items we are talking about
 7        are 1, 2, 4, and -- to the extent of limit claims --
 8        5, but if there is more than that, I want to clarify.
 9            We can take a five-minute break to give you a
10        chance to read it and give everyone a chance to use
11        the restroom, too, and then come back on the record.
12   A    Sure.
13   Q    Thanks.
14            MS. NOHAVEC:  Okay.
15
16                              (Brief recess.)
17
18        BY MR. SCUDERI:
19   Q    Okay.  We are back on the record, and we took a break
20        to allow you to go over covered risks in the title
21        insurance policy, which is Exhibit 2.
22            Do any of the other provisions apply to this
23        particular easement?  I'm referring to the 2000
24        easement that we marked as Exhibit 5.
25            MS. NOHAVEC:  I'm going to object to the extent
```

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1      that it exceeds the scope of this deposition.  The

2      coverage determinations are set out in the letters to

3      the insureds.

4              THE WITNESS:  Covered Risk 9, I believe an

5      easement is an encumbrance under Washington law.

6      BY MR. SCUDERI:

7   Q   Okay.  Any others?

8   A   That was it.

9   Q   Okay.  So Chicago Title determined in August 2021 that

10      the 2000 easement was a covered defect; correct?

11  A   September 2021.

12  Q   Okay.  And that was as a result of obtaining a survey

13      of the property; correct?

14  A   Correct.

15  Q   Was that True North Land Surveying?

16  A   I think so, yeah.  Yes.

17  Q   And I think that survey -- that survey was obtained in

18      September 2021; correct?

19  A   Correct.

20  Q   And that's what put you on notice of that -- well, at

21      least confirmed that was a defect?

22  A   Correct.

23  Q   Okay.  How would you define "fair market value" of the

24      property?

25  A   Fair market value?  Typically how much -- in an arm's

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1          length transaction after sufficient marketing for, I

2          think, like, maybe 60 or 90 days, how much someone would

3          pay for the property.

4    Q     Okay.  When did Chicago Title hire Anthony Gibbons?

5    A     It would have been shortly after the August 2022

6          coverage letter -- no, sorry -- June 2022 coverage

7          letter.

8    Q     Okay.  And this is -- Mr. Gibbons is a land appraiser;

9          correct?

10   A     Correct.

11   Q     And he is licensed in the state of Washington?

12   A     Yes.

13   Q     And who was responsible for hiring Mr. Gibbons?

14   A     I was.

15   Q     Okay.  And how did you pick Mr. Gibbons?

16   A     I worked on -- with him in several similar easement

17         claims in this area and county before, so I just knew

18         that he'd be able to do the work.

19   Q     Okay.  And what other cases have you used

20         him -- worked with Mr. Gibbons?

21   A     I don't know what the -- not litigation cases but just

22         regular claims by insureds.  I don't know the names of

23         them.

24   Q     Okay.  How many of them?  How many separate occasions?

25   A     I'd say at least three.

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
1   Q      Has he done other work for Chicago Title?

2   A      Either Chicago Title or one of our other underwriters.

3   Q      Okay.  So the answer to that is, yes, he has done

4          other work other than the three claims you were

5          referring to for Chicago Title or Fidelity or one of

6          the related companies?

7   A      Yes.

8   Q      Do you know how many other cases he has done?

9   A      I couldn't estimate that.

10  Q      Okay.  Because -- you can't estimate it because you

11         don't know?

12  A      Correct.

13  Q      Okay.

14  A      I mean, I know he has done work for plenty of claims,

15         but I couldn't tell you a number.

16  Q      Okay.  Has he ever been adverse to Chicago Title or

17         Fidelity?

18  A      I believe so, yeah.

19  Q      Do you know how many times that has been the case?

20  A      I couldn't tell you that either.

21  Q      Okay.  What made you believe that he has been adverse

22         to Chicago Title or Fidelity?

23  A      He was an appraiser in Washington.  He is very

24         professional and well-known.  I know that he has been

25         on -- he has been hired by plaintiffs in litigation
```

Page 31

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1     against Fidelity just as his -- under his skill as

2     a -- as an appraiser.

3  Q   Did you instruct Mr. Gibbons to make any assumptions

4      when appraising the loss of the -- in regards to the

5      2000 easement?

6  A   So I mean -- so "assumption" is kind of an appraisal

7      term of art.  There is a hypothetical condition involved

8      in doing a diminution of value.  So when you are getting

9      a diminution of value appraisal, you are essentially

10     asking the appraiser to do two appraisals.  The first is

11     just appraising the value of the land as it is, so that

12     would be subject to the property that's -- or the

13     easement that is at issue.

14         The second one would be to go under this hypothetical

15     condition or assumption that the easement doesn't exist.

16     And then you take those two numbers and subtract them,

17     that's -- it gives you what the loss -- the diminution

18     of value between the two different values.

19 Q   Okay.  And did you instruct him on making any

20     assumptions in regards to the appraisal?

21 A   So that assumption, the hypothetical condition that the

22     easement doesn't exist, that would be the scope of the

23     appraisal that I told him about.

24 Q   Okay.

25 A   Other than that, there is not really any other


Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
 1           assumptions to make.
 2    Q      So other than setting up the hypothetical, you did not
 3           give him any instructions regarding assumptions?
 4    A      Correct.
 5    Q      Okay.  The hypothetical you just described, you know,
 6           in -- the value of the property without the easement
 7           versus the value of the property with the easement?
 8    A      Correct.
 9    Q      Okay.  Now, in terms of the -- doing the appraisal,
10           was it just the real property that was being
11           considered without the improvements on it or was it
12           the real property with the improvements on it that was
13           being considered?
14    A      It is the real property with the improvements.
15    Q      So the home, you know, all the improvements that are
16           on the property?
17    A      Yes.
18    Q      Okay.  The report is described as a restricted
19           appraisal report.  Do you know why that is the case?
20    A      Where does it say that?
21    Q      In the -- well, let me ask you this:  Is it a
22           restricted appraisal report?
23    A      I don't know what that means, so let me look at the
24           context.  So what page is it on?
25    Q      I don't -- I don't have the appraisal in front of me,
```

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1          I don't think, unless you have it on your computer

2          already.

3   A      Okay.  I'm looking for -- whoops.

4              It sounds like that is a term of art for appraisers.

5          Yeah, I don't know what that means.

6   Q      Okay.

7   A      It is on -- where is it?  Oh, it is on the first page,

8          the second paragraph.

9              MS. NOHAVEC:  Mr. Scuderi, are you going to mark

10         the appraisal as an exhibit since we are referring to

11         it?

12             MR. SCUDERI:  I'm fine marking it as an exhibit.

13             MS. NOHAVEC:  Okay.

14             MR. SCUDERI:  I don't think I provided it to you

15         in my list of exhibits.  Maybe I did.

16             MS. NOHAVEC:  I don't think so either.  I just

17         want the record to be complete if we are referring to a

18         document.

19             MR. SCUDERI:  We can get it during a break in the

20         future, you know, and that way we can have it marked

21         with the court reporter.  That's easy enough.  So let's

22         just call it 6 for now, and then we will mark it

23         officially during one of our breaks.

24             THE WITNESS:  Okay.  So I did some Googling, and

25         it says there is an appraisal report and a restricted

Page 34

Plaintiff's Designation: 34:24-35:12

Chicago Title's Obj.: Objection. Relevance

Plaintiff's Response: Shows the witness was unaware of the type of appraisal ordered by Chicago Title and resorted to Googling it during his deposition despite being an attorney.

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
1          report.
2          BY MR. SCUDERI:
3   Q      Yeah, you shouldn't be Googling during your
4          deposition, but it is --
5   A      I was curious.
6   Q      -- but since you -- but since you did, let me ask you
7          this:  I know you have your computer screen open and
8          it is -- have you been Googling through this
9          deposition so far, or is this the first time?
10  A      This is the first time.
11  Q      Okay.
12  A      I was just curious.
13  Q      What does it say since you have raised the -- you
14         opened the issue?
15  A      Well, I went and closed it, but it said that a
16         restricted report is basically just -- it is a report
17         that just gives you the property value without, like, an
18         expansive evaluation of, like, more detailed things
19         regarding the broader appraisal market, I guess.  So
20         there is a restricted report and an appraisal report,
21         and there is different reporting requirements on -- by
22         U.S. pat.
23  Q      Okay.
24  A      So it seems to be just kind of a distinction that
25         appraisers use for some reason.
```


Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
1    Q    Now, at this point, all claims were being denied by

2         the insurance company; correct?

3    A    By "this point," you mean today or --

4    Q    No.  August 23rd, 2021, as depicted in Exhibit 11.

5    A    No.  The easement one was deferred to later until they

6         could get a survey.

7    Q    Where is that in the letter?

8    A    So it is the -- the top of Page 3, and the heading is at

9         the bottom of Page 2.  It is mainly the last sentence of

10         that paragraph.

11    Q    Okay.  Where it says, "The company will retain a

12         surveyor to complete a desk survey comparing the 2000

13         easement and the 1998 easement and will provide a

14         coverage determination as to this portion of the claim

15         when the survey has been completed"?

16    A    Yep.

17    Q    And then when was the survey obtained?

18    A    That would have been, I think, the last week or two of

19         September 2021.

20    Q    Okay.  And then when was the appraisal obtained?

21    A    The appraisal was completed, I think, in August 2022.

22    Q    Okay.  Why the -- why the delay of, you know, 11

23         months?

24    A    The insured --

25              MS. NOHAVEC:  Objection.  Asked and answered.
```

Plaintiff's Designation: 84:11-21

Chicago Title's Obj.: 84:22-85:12 should be read in conjunction

Plaintiff's Response: Plaintiff objects to Chicago Title's proposed addition on the basis of relevance and jury confusion because WAC 284-30-330(12) provides that an insurer cannot hold up resolution of one claim in order to influence resolution of other claims.

Page 84



LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

Chicago Title's
Designation:
84:22-85:12

Plaintiff's Objection:
Plaintiff objects to
Chicago Title's
proposed addition
on the basis of
relevance and jury
confusion because
WAC 284-30-330(12)
provides that an insurer
cannot hold up
resolution of one
claim in order to
influence resolution
of other claims.

1    THE WITNESS:  Oh, yeah, we did talk about this

2    earlier.  The insureds requested reconsideration of all

3    11 of the original documents and then added 12 more

4    documents to investigate.  So until coverage could be

5    determined under all of those 23 other things, it

6    wouldn't be appropriate to get an appraisal.

7    BY MR. SCUDERI:

8    Q   And the reason for that is why?

9    A   All sorts of things could affect the appraiser's

10   analysis.  If -- if 4 more of these 12 additional

11   documents are accepted, then that would have to also

12   factor into the loss and be analyzed by the appraiser.

13   Q   Do you agree that the 2011 notice imposes a Code

14   enforcement lien on the property?

15   A   No.

16   Q   Why not?

17   A   It doesn't say that it imposed one.  It says the

18   penalties are zero.

19   Q   So because it says the penalties are zero, it is your

20   position it doesn't -- your position meaning Chicago

21   Title's position, it doesn't impose a lien on the

22   property; correct?

23   MS. NOHAVEC:  Objection.

24   THE WITNESS:  Not on its own.  I mean to the

25   extent there were any unpaid penalties and costs, but it

Page 85



LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1             There a number of provisions in this claims manual
2        that have been redacted, and I will purport to you
3        that this is a version that Mr. Cleverley provided to
4        me last evening.  We had an earlier version that was
5        redacted even more.  Do you know who did the
6        redactions on this?
7    A    No.  That is more a litigation question.
8    Q    Okay.  I don't think it was counsel.  I think it was
9        someone at Chicago Title.  That's why I'm asking.
10   A    I don't think it was someone in my office.  I don't
11       know, you would have to ask Cleverley and Erika.
12   Q    Okay.  I mean, you don't have any knowledge who did
13       the redactions?
14   A    No.
15   Q    Okay.  What is the purpose of this document?
16   A    So this document kind of sets out some basic things
17       about real estate and title insurance law.  I think it
18       is kind of just a -- an all-purpose manual for claims
19       handling personnel to refer to and kind of learn about
20       how -- what title insurance is and how real estate
21       transactions work.
22   Q    Okay.  And is this something that all claims handlers
23       are made familiar with?
24   A    Yes.
25   Q    And they are supposed to follow these guidelines in

Page 95


Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1          terms of their processing of claims such as the

2          Plaintiffs' claims in this case?

3    A     Yes.

4    Q     And this is the document that Mindy and anyone else

5          involved in this claim would have had and would have

6          been expected to rely on in terms of following a

7          claims procedure in this matter?

8    A     Yeah.  So it looks like this is the 2021 version, so

9          yeah.

10   Q     And I saw -- yeah, I saw that on the -- and we are

11         talking about -- if you go to -- it is page small I.

12         It is the second page of the document, and it just

13         says, "Claims Handbook," and it says it was prepared

14         in April -- well, it doesn't say it was prepared, but

15         we assume it was prepared in April 2005 and revised

16         January 2021; correct?

17   A     Yeah.

18   Q     And this would have been the applicable document that

19         would have applied to claims handling in this case?

20   A     Yes.

21   Q     The claims handling was all after January of 2021;

22         correct?

23   A     Correct.

24   Q     Do you know if it has been provided since then?

25   A     I don't think it has.  Not that I'm aware of at least.

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Case 2:23-cv-00584-JNW    Document 186    Filed 09/05/25    Page 29 of 46

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1      asserting that it did, and so they still had a 50

2      percent interest in the property.

3      BY MR. SCUDERI:

4  Q   Okay.

5          MS. NOHAVEC:  Okay.

6          THE WITNESS:  So it was 15, 16 years later.  It

7      was an interesting one, but, you know, it is not going

8      to be in the claims handbook because, you know --

9      BY MR. SCUDERI:

10 Q   At least not yet?

11 A   Not yet.  Property can be affected by any number of

12     weird things, and it differs county by county and state

13     by state.  So this -- the claims handbook is very

14     generally, "Here is what an easement is."

15 Q   In terms of you being the designee today, your

16     involvement on this file is relatively limited.  I

17     mean, it is related to -- you took over this year in

18     part to do the -- in the appraisal process; correct?

19 A   Yes.  So I started in -- or I started on this file

20     in -- at the end of March 2022, and that was to finish

21     the investigation into the reconveyance -- or not

22     reconveyance -- rather, reconsideration and do the --

23     any loss considerations after that.

24 Q   In terms of Exhibit 6, which is the appraisal done by

25     Anthony Gibbons, he gives a diminution of market value

Page 100



LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1          of $5,000 round.  Did anything about just that round

2          number give you some pause in terms of the appraisal

3          process, that he would just come up with a $5,000

4          figure?

5    A     Well, he came up with a more exact number after doing

6          some math, but I believe he rounded it up.  Appraisers

7          pretty frequently round to, like, the nearest thousand

8          just because of the nature of the -- the nature of the

9          job.  You know, it is scientific in that they use math

10         and comparisons and all that, but there is also a bit of

11         an art to it.  So kind of in recognition of the inherent

12         imprecision there, they will typically round up.

13   Q     How much is the -- what is the total coverage under

14         this policy?

15   A     Probably -- let me pull up the policy real quick.

16         Somewhere in the millions, and then there was an

17         endorsement.  Okay.  So the original policy amount was

18         $1,325,000, and then there was an endorsement increasing

19         it to $4,325,000.

20   Q     Okay.

21              MS. NOHAVEC:  Since we are referring to the

22         endorsement, I'm just not sure if that endorsement was

23         attached to Exhibit 2.

24              THE WITNESS:  It is.

25              MS. NOHAVEC:  Is it?  Okay.  Thank you, Tom.


Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1          MR. SCUDERI:  It is the last page.

2          THE WITNESS:  And then there is -- I forget which

3    condition it is, but somewhere in here it increases the

4    policy by 10 percent every year after the date of the

5    policy for a maximum of 5 years so -- I mean, it has

6    been 5 years so -- okay.  It is Condition 9.  So

7    whatever 150 percent of $4,325,000, that would be the

8    maximum exposure under the policy.

9    BY MR. SCUDERI:

10   Q    Now, in terms of -- we were talking earlier about the

11        2010, 2011 notice, which are Exhibits 9 and 10.

12        The -- and there was no coverage for any of those;

13        correct?

14   A    Correct.

15   Q    And you went through the -- have you gone through the

16        32 covered items to determine there was no coverage,

17        or are you just relying on Mindy's letter?

18   A    Well, I know what -- just from experience, I know what

19        cover risks are going to be relevant to this kind of

20        thing.  So, you know, the -- the covered risk about a

21        bankruptcy trustee trying to void it as preferential

22        transfer, you know, I don't need to go one by one to --

23   Q    I understand that.  But, I mean -- and I understand

24        some of them are, like, just -- obviously do not apply

25        to this.

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
 1              MR. SCUDERI:  Well, if there is something more,
 2        then please tell me.
 3              MS. NOHAVEC:  You have all of the claims file.
 4        You have all of the e-mails.  You have the coverage
 5        letters.  You have the status report that is Exhibit 19.
 6        Everything has been produced to you.
 7              MR. SCUDERI:  Right.  So I'm asking the question:
 8        Where is the documentation that establishes this
 9        provision in the claims letter?  So . . .
10              THE WITNESS:  In the claims letter?
11              MR. SCUDERI:  He can answer it or he can't.  I
12        mean -- but I'm entitled to ask the question, and if he
13        has to point to something else, you know, some
14        correspondence or something or if he doesn't know, then
15        he just says he doesn't know.
16              THE WITNESS:  It is on Page 3 of the coverage
17        letter.
18        BY MR. SCUDERI:
19   Q    Okay.  And where is it in -- so if we go to the
20        coverage letter -- and by the way, earlier when I was
21        asking you about if you knew about any regulation
22        regarding claims files in Washington, you said you
23        weren't aware of any specific regulation.
24   A    Yeah, I know that there are regulations, but, I mean,
25        there is literally thousands of them.  I don't know them
```


Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
 1        all off the top of my head.
 2   Q    Well, let me read one to you.  It is WAC 284-30-340,
 3        and it is -- and it provides that the "Insureds'
 4        claims files are subject to examination by the
 5        commissioner or by duly appointed designee.  The file
 6        must contain all notes and work papers pertaining to
 7        the claim in enough detail that pertinent events and
 8        dates of the events can be reconstructed."
 9   A    Yes.
10   Q    And that's a requirement.  That's pretty universal in
11        most states; correct?
12   A    Yeah.  That sounds pretty -- pretty thorough.
13   Q    Most states require that of insurers.  That's
14        specifically Washington's requirement?
15   A    Okay.
16   Q    You would agree with that?
17   A    If you are representing to me that that's what the
18        regulation says, then I believe you.
19   Q    Well, I am representing to you that's what the
20        regulation says.  I believe I read it correctly, if
21        not, I will be corrected by Erika and Matthew.  But it
22        is -- what I'm asking you is you do these claims all
23        over most of the American west, Alaska, Hawaii.  Are
24        you familiar with provisions that require insurers to
25        maintain and document things in a claims file?
```

Capitol Pacific Reporting, Inc.

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1    A    Yeah.

2    Q    Regulations like that one, the one I just read?

3    A    Yes.

4    Q    And you would agree with me that is -- it is a pretty

5         universal practice in most states?

6    A    Yes.

7    Q    Okay.  It says, "The file must contain all notes and

8         work papers pertaining to the claim in enough detail

9         that pertinent events and dates of the events can be

10        reconstructed."

11            Now, would you agree with me that a pertinent

12        event, in terms of claims handling, is determining

13        something is not covered?

14   A    Yes.

15   Q    Okay.  What I'm asking for is in Exhibit 4, where was

16        that -- where is that determination?  Where

17        did -- where did Mindy get the information that this

18        was not covered under the policy?  What information

19        did she get from King County or someone else that gave

20        her -- that led her to determine this was not covered,

21        or was this just something she came up with?

22            MS. NOHAVEC:  Same objection.

23            THE WITNESS:  I think, again, you are under this

24        misapprehension that Exhibit 4 that you provided today

25        is the entire claim file, and as I have said before, it

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1          is not.  This is a section of the claim file, a part of

2          what was produced in the litigation.

3          BY MR. SCUDERI:

4    Q     Right.

5    A     Everything --

6    Q     Okay.  If it is not here, where would it be?

7    A     It would be somewhere in Mindy's e-mails.  I mean, I

8          can't print out her brain for you, but --

9    Q     Okay.

10   A     -- you take everything together that she's investigated,

11         all of it is there in the claim file and the actual

12         determination of the coverage is expressed in this

13         coverage letter.

14   Q     Okay.  Where -- but you also did a reconsideration of

15         this entire claim; correct?

16   A     Yes.

17   Q     Not too long ago?

18   A     Correct.

19   Q     What did you see that confirmed to you that this

20         particular loss was not covered?

21   A     Well, I read through everything in the claim file, the

22         coverage letter, the claim letter, all the documents the

23         insured sent, everything that was taken from the County,

24         the entire claim file, and I looked more specifically at

25         the particular things that the insureds had brought up

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1              in their reconsideration letter.

2    Q     And so what documents did you rely on to determine

3          that it was not covered?

4    A     I mean, the same --

5              MS. NOHAVEC:  Objection.  Asked and answered.

6              THE WITNESS:  The same ones that Mindy did, the

7          whole file.  The entire investigation coming together

8          leads to that conclusion.

9          BY MR. SCUDERI:

10   Q     But sitting here today, you can't tell me what

11        specific documents you relied on?

12   A     If you want me to write down, like, a list of documents

13        that are relevant to the claim decision, like, I can do

14        that for you and provide it later.

15   Q     Yes.

16   A     The thing is --

17   Q     I do want you to.

18   A     Okay.  That's not what the statutes or the regulations

19        require.  They don't -- they don't require an inventory

20        of, you know, a document and then a string from that

21        document to -- to the coverage letter, and they don't

22        need a narrative saying, "Here is all the evidence that

23        I found, and here is what is relevant.  Here is what is

24        not relevant."  The regulation says such that it can be

25        reconstructed.  That doesn't mean it has to be

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
 1        constructed for you to look at right now.  That's for --
 2   Q    And --
 3   A    -- the Department of Insurance commissioner to be able
 4        to look at upon their request.
 5   Q    Right.  But we are -- we are in a bad faith litigation
 6        case right now under Washington statutes and under the
 7        Insurance Fair Conduct Act.  And, you know, obviously
 8        when that happens, we get the claims file, and we are
 9        getting information that normally an insured would not
10        get; correct?
11   A    Correct.
12   Q    So we are in a position now that you are taking a
13        position that there is no coverage, and when I ask you
14        specifically why, you say, "Well, you look at the
15        totality of the claims file, which is thousands of
16        pages," but you won't tell me specifically what it is.
17            Now, I understand it is thousands of pages and you
18        probably haven't put together a list of what documents
19        you relied on, but unfortunately I don't have it
20        either.  And as counsel for the Plaintiffs, I'm asking
21        you:  What did you rely on and what did Mindy rely on?
22        And you just said earlier that if you took some time
23        and you went through the file, you could give me a
24        list of documents; is that correct?
25   A    If I went through every single page of the documents
```

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1       that you have in your possession, I could tell you which
2       ones are relevant, but so can you.  And the thing is we
3       have written down in two concise paragraphs what the
4       result of that investigation is.  You want me to go
5       through and tell you what -- what particular sentences
6       or e-mails were sent to Mindy that might have tickled
7       some part of her brain that reminded her of the policy
8       or something like that, it is impossible.
9           This is the -- the coverage letter is the
10      determination, and there is -- except for, like, notes
11      that might have been taken during the claim file, there
12      is no way to draw a precise line from one e-mail all the
13      way to this coverage letter.  It is a totality of the
14      circumstances.  It is an investigation.  It is -- I
15      don't know what is going through people's minds when
16      they do it, but you can figure it out based on what is
17      in the claims file and what the final coverage letter
18      actually says.
19  Q   Well, I mean, you remember being a kid back in school
20      when you did a math problem and you were forced to
21      show your work, how you got there?
22  A   Yeah.
23  Q   You couldn't just put down the answer even if you knew
24      the answer, you had to show the methodology of getting
25      to the answer?

Capitol Pacific Reporting, Inc.                    scheduling@capitolpacificreporting.com
                                                                          800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
 1   A    This letter tells you how we got to that answer.  It
 2        doesn't say, you know, "Pursuant to X e-mail sent on
 3        this day, here is the -- here are the 14 most relevant
 4        sentences from the County that support our position."
 5        The point of the coverage letter is to tell you what the
 6        position is and why.
 7   Q    But you don't have to explain to the insured how you
 8        got there?
 9             MS. NOHAVEC:  Objection.
10             THE WITNESS:  You do, but not with the meticulous
11        precision that you are -- seem to be implying is
12        required.
13        BY MR. SCUDERI:
14   Q    So two paragraphs is enough?
15   A    For this part of the claim, yes.
16   Q    And if you had to, you could go back and reserve -- go
17        through the file and point out all the provisions, but
18        you haven't done that yet?
19   A    I mean, it is an extremely time-consuming process for me
20        to go through all these thousands of documents and kind
21        of tell you what the -- what documents you should be
22        focusing on.
23   Q    Well, when you -- when you did the -- I recognize that
24        you did not personally do the initial coverage letter,
25        that was done by Mindy who is not here right now; so
```


Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1        we can't ask her.  But you did do the reconsideration

2        and presumably -- and you said, "I went through the

3        entire claims file.  I went through everything in this

4        matter and came up with this determination that that

5        original coverage letter was correct."  And when I

6        asked you, "What did you rely on specifically?" you

7        can't say it today?

8   A    Yes, I can and I did.

9              MS. NOHAVEC:  Objection.

10       BY MR. SCUDERI:

11  Q    What did you say?

12  A    I said I looked at everything in the claims file, the

13       documents themselves, the policy, the insureds' claim

14       letter.  I read through everything that Mindy had sent

15       to and from the County, and I looked through the permit

16       documents.  It is not like there is one single smoking

17       gun that I need to point to and tell you about in this

18       coverage letter.

19          The point of the coverage letter is to tell you what

20       the coverage is and why, and the point of

21       reconsideration is to respond to the particular things

22       that you brought up asking us to reconsider.  When I'm

23       doing my investigation, I'm not reviewing a page of a

24       document and then taking a paragraph of notes about it.

25       It is -- it goes and sits in my head, and it influences

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1          the final decision, whether or not -- whether it goes
2          for or against it.
3              But there is so many different things that all come
4          together that don't -- might not have a paper trail
5          because they are just part of what you are soaking up in
6          your brain and then putting out on this paper.
7      Q   Is it possible you made a mistake?
8      A   No.
9              MS. NOHAVEC:  Can we take a break, please?  I
10         just -- my son just arrived.  I just need a few minutes,
11         please.
12             MR. SCUDERI:  That's fine.
13             MS. NOHAVEC:  Thank you.
14
15                          (Brief recess.)
16
17             MR. SCUDERI:  All right.  Back on the record.
18         BY MR. SCUDERI:
19     Q   Can you show me where in Exhibit 4 there are any
20         communications with King County regarding the 2001
21         covenant, Exhibit 7, or the 2004 covenant, Exhibit 8?
22     A   I don't know if what has been provided as Exhibit 4, I
23         don't know if it has references there.
24     Q   Okay.  Is there any -- I don't see any references in
25         Exhibit 4, but I -- you know, if you can tell me where

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

```
 1            they are, right, that's what I'm asking for.
 2   A    If they are in there, then I think it speaks for itself.
 3        I haven't read every word of it.
 4   Q    That's not an answer.  I mean, you kind of have to
 5        give me --
 6              MS. NOHAVEC:  Let him -- let him finish his
 7        answer.
 8        BY MR. SCUDERI:
 9   Q    Okay.  Go ahead.
10   A    I haven't read every single word of this.  I don't -- at
11        least I don't remember every single word, so it could be
12        in there.  If you want to take the time to have me sit
13        through -- go through all 19 pages and want to use the
14        deposition to do that, that's fine, but if you are
15        telling me that there is or is not a reference in here,
16        I will believe you.
17   Q    Well, I'm -- you are not aware of any reference in
18        here?
19   A    Correct.
20   Q    Okay.  The -- would you agree with me in terms of
21        assessing fair market value of the property that the
22        value of any improvements that exist on the property
23        should also be used in computing that value?
24              MS. NOHAVEC:  Objection.  Lack of knowledge.
25        Beyond the scope.
```

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1            THE WITNESS:  If you are coming up with a fair

2      market value for a property, typically the residence is

3      included.

4      BY MR. SCUDERI:

5  Q    Okay.  And in your review, you mentioned how when you

6      did your reconsideration, you reviewed the entire

7      claims file; you reviewed all the documentation; you

8      reviewed everything from King County.

9          Do you remember anything specifically from King

10     County in regards to Exhibit 7, the 2001 covenant, or

11     Exhibit 8, the 2004 covenant?

12 A    I don't remember anything specific.  You have the entire

13     claims file.  If there is a specific reference, then it

14     is in there.

15 Q    And if there isn't, then there wasn't?

16 A    Correct.

17 Q    And just before we took a break, I asked you if it was

18     a possibility you have made any mistakes, you said no.

19     Are you that certain you did not make any mistakes?

20 A    Yes.

21 Q    Why are you so certain?

22 A    I'm very good at my job.

23 Q    Okay.  Have you ever been accused of making a mistake

24     in connection with your job?

25 A    Certainly, all the time.

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1  Q    Have you ever been actually found to have made a

2       mistake in connection with your job?

3  A    No.

4  Q    Never?

5  A    Never.

6  Q    In seven years?

7  A    Yes.

8  Q    Okay.  Do you know if Mindy has ever been accused of

9       making a mistake in connection with her job?

10 A    I don't know.

11 Q    Okay.  So in -- it is possible for a -- a coverage

12      determination to be done mistakenly; correct?

13 A    It is a possibility, yeah.

14 Q    But you -- you -- that's something you would never do?

15 A    I won't say I would never do it, but if we are talking

16      about this case and these two letters, they are correct.

17 Q    Okay.  And in terms of your career at Chicago Title,

18      you have never made a mistake in terms of coverage?

19 A    No.

20 Q    Have you ever been accused of making a mistake by a

21      plaintiff or an insured in terms of coverage?

22           MS. NOHAVEC:  I'm going to object to beyond the

23      scope of this deposition.  I mean, you are -- he is here

24      as a representative of Chicago Title to talk about the

25      things that you had in the notice of deposition, not his

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1       about being involved in litigation.  Claims, generally,

2       involve litigation a lot of the time, like neighbors

3       versus neighbors.

4  Q    I'm talking about litigation where Chicago Title was

5       a -- was a defendant in the case.

6  A    I can't -- I can't name any specific ones.  I don't

7       think there are ones that I have personally been

8       involved in.

9  Q    Okay.

10            MR. SCUDERI:  All right.  I'm going to reserve at

11      this point.  I have not gone through the whole claims

12      manual yet, and we have a motion to compel on that

13      anyway; so we're we don't have the entire claims -- the

14      claims manual yet.  So thank you very much and we will

15      order.

16

17                          (Signature reserved.)

18                          (Concluded at 4:57 p.m.)

19

20                          (Deposition Exhibit Nos. 1
                            through 12 marked for
21                          identification.)

22

23

24

25



Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

LAKHAN JHA & MINAKSHI KUMARI vs CHICAGO TITLE OF WASHINGTON, et al.
Thomas Paul Hayden - November 29, 2022

1

2                    C E R T I F I C A T E

3        I, KRISTIN D. MANLEY, a Certified Stenographic
    Court Reporter in and for the State of Washington,
4    residing at Montesano, do hereby certify;

5        That the foregoing proceedings were taken before me
    and thereafter reduced to a typed format under my
6    direction; that the transcript is a full, true and
    complete transcript of said proceedings consisting of
7    Pages 1 through 135;

8        That as a CCR in this state, I am bound by the Rules
    of Conduct as Codified in WAC 308-14-130; that court
9    reporting arrangements and fees in this case are offered
    to all parties on equal terms;

10

11       That I am not a relative, employee, attorney or
    counsel of any party to this action, or relative or
    employee of any such attorney or counsel, and I am not
12   financially interested in the said action or the outcome
    thereof;

13

14       That upon completion of signature, if required, the
    original transcript will be securely sealed and the same
    served upon the appropriate party.

15

16       IN WITNESS WHEREOF, I have hereunto set my hand
    this 7th day of December, 2022.

17

18

19

20   Kristin D. Manley, CCR No. 2211
     Certified Stenographic Reporter

21

22

23

24

25

                                              Page 135



Capitol Pacific Reporting, Inc.                scheduling@capitolpacificreporting.com
                                               800.407.0148